

COLE SCHOTZ
COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
Attorneys at Law                    A Professional Corporation

COURT PLAZA NORTH
25 MAIN STREET
P.O. BOX 800
HACKENSACK, NJ 07602-0800
201-489-3000   201-489-1536 FAX
—
NEW YORK
—
DELAWARE
—
MARYLAND
—
TEXAS

**Damian L. Albergo**
MEMBER
ADMITTED IN NJ AND NY

**Reply to New Jersey Office**
WRITER'S DIRECT LINE: 201-525-6206
WRITER'S DIRECT FAX: 201-678-6206
WRITER'S E-MAIL: DALBERGO@COLESCHOTZ.COM

July 18, 2012

<u>**Via Electronic Case Filing**</u>

Hon. Michael A. Hammer, U.S.M.J.
Martin Luther King Federal Building and Courthouse
50 Walnut Street
Newark, NJ 07101

      Re:    Wendy Starland v. Rob Fusari, et ano.
                Civil Action No.: 10-cv-04930 (JLL)(MAH)

Dear Judge Hammer:

      We, along with William Dunnegan, who is admitted *pro hac vice*, represent plaintiff Wendy Starland.  I am writing because Mr. Kohane is on vacation.

      We have written Point I of this letter.  James C. DeZao, Esq., the attorney for defendants, has written Point II.

      Counsel for the parties have conferred by telephone on July 17, 2012 in a good faith attempt to resolved the issues raised in this letter and have been unable to do so.

I.

      We are writing because defendants have failed to comply with:

      (A)    The May 25, 2012, order (Dkt. No. 132, ¶ 4), by failing to produce responsive documents and answer interrogatories; and

      (B)    The June 7, 2012, order (Dkt. No. 136 ¶ A) by failing to produce a witness prepared to testify at a deposition pursuant to Fed. R. Civ. P. 30(b)(6).

Cole, Schotz, Meisel, Forman & Leonard, P.A.
ATTORNEYS AT LAW

Hon. Michael A. Hammer, U.S.M.J.
July 18, 2012
Page 2

A.      The May 25, 2012, Order

The May 25, 2012, order (Dkt. No. 132) provided at paragraph 4:

"On or before **June 18, 2012,** defendants shall provide a complete response to interrogatories 1 and 2 (second set) and produce documents in response to document request no. 1 (third set) as defined in paragraph 1 of the Stipulation and Order filed on March 28, 2012 [ECF No. 113]."

Interrogatory 1.  Defendants have failed to provide an adequate answer to interrogatory 1 (Second Set), as required by the May 25, 2012, order (Dkt. No. 132 at ¶4) Interrogatory 1, served November 4, 2011, provided:

> "State each amount of money that Fusari has received, directly or indirectly, on or after March 23, 2006, relating to Stefani Germanotta." (Dkt. No. 127-2 Ex. F at 1.)

At the May 25, 2012, conference, in response to the protestations of defendants' counsel that Fusari was not an accountant, the Court explained exactly what it required Fusari to do, stating:

> "So, look -- look, this actually at the end of the day is not that complicated. [Fusari] is going to go back and use the methodology that he testified to at the deposition to pull down the responsive documents and add them up to come up with the answer to Interrogatory Number 1."  (Dkt. No. 134 at 60:22-61:1.)(Emphasis added.)

Defendants' June 18, 2012, response to Interrogatory 1 did not come close to complying with the Court's order.  Defendants' response stated:

> "Pursuant to F.R.C.P. 33(d), the **Defendants have produced business records** in the form of CDs containing ASCAP and Interscope documents, and copies of EMI documents/statements.  The burden of deriving or ascertaining the answer will be substantially the same for either party; therefore, the plaintiff may review the specified records to determine the appropriate response." (Emphasis added.)

Based upon the limited documents Defendants have produced, Starland cannot determine the answer to Interrogatory 1.

Document Request 1.      Fusari has failed to produce any documents in response to the March 25, 2012, order, except 46 pages of EMI documents that show less than $50,000 in revenue.  Document Request 1, served November 4, 2011, provided:

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
                    ATTORNEYS AT LAW

Hon. Michael A. Hammer, U.S.M.J.
July 18, 2012
Page 3

> "Documents sufficient to demonstrate each amount of money
> Fusari has received arising from or relating to the relationship
> with Stefani Germanotta, since May 17, 2006." (Dkt. No. 127-2
> Ex. N at 4.)

Defendants produced by e-mail on June 18, 2012, two types of documents,
purporting to be from Interscope and ASCAP.  The production of the Interscope documents
failed to meet defendants' obligation under the May 25, 2012, order because those
documents concerned the revenues of Lady Gaga, not Fusari.  Fusari testified:

> "Q.   Let me show you what I've marked as AK.  Do you know
> what that is?
>
> A.   This is some kind of accounting.  A monthly statement.
> No, I can't really tell.     Some sort of monthly statement.  For
> what it is --
>
> MR. DeZao:  Do you know what it is?
>
> A.   I don't know what it is.  It's a monthly statement, but I don't
> know for what, though.
>
> Q.   Is it your royalty statement?
>
> A.   I don't believe so.  I don't see my name on here.  **No, it's
> not my monthly statement.**  It looks like it's Gaga's monthly
> statement.  Yes, it's not mine.  (Tr. 7/10/12 at 102:21-103:9)
> (Emphasis added.)

The production of purported ASCAP documents failed to meet defendants'
obligations under the order because the documents do not show the revenue defendants
received from ASCAP in connection with Lady Gaga.  Those documents consist of raw
Excel spreadsheets, that contain neither an indication that they originated from ASCAP, nor
an explanation of what the data contained in them reflects.  At his July 10, 2012, deposition,
Fusari could not explain how these Excel spreadsheets were created, or who created them,
or whether they reflected all of the revenue from ASCAP.  Fusari testified:

> Q.   Now, do you know whether or not the documents that were
> produced on CD ROM, which purported to be from ASCAP,
> were all of your ASCAP records or whether they were just a
> portion of your ASCAP records?
>
> A.   I don't recall."  (Tr. 7/10/12 at 108:2-7)

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
            ATTORNEYS AT LAW

Hon. Michael A. Hammer, U.S.M.J.
July 18, 2012
Page 4


At the same time that Fusari produced these essentially useless Excel spreadsheets, Fusari had his ASCAP royalty statements available to him over the Internet. A review of the website at www.ascap.com/members/statements/guides.aspx and of the member's portion of that website demonstrates that PDF statements, bearing the ASCAP mark, are available to members (Dkt. No. 143-1 at ¶ 13), along with a detailed guide that explains how to read the statements.

As a result of defendants' failure to comply with paragraph 4 of the May 25, 2012, order, Starland cannot determine the amount of revenue defendants have received as a result work with Germanotta.  The following chart demonstrates the status of relevant discovery concerning defendants' revenue:

| Which companies have paid defendants money related to Germanotta? | Did defendants produce statements? | Did a third-party produce statements? | Have defendants admitted in response to RFAs or deposition testimony that the documents they or third parties produced accurately demonstrate their revenue concerning Germanotta? |
|---|---|---|---|
| **SONY** | | | |
| 3/2006 – 6/2011 | No | Yes | No |
| 7/2011 –  present | No | No | -- |
| **ASCAP** | | | |
| 3/2006 – 9/2009 | No | No | -- |
| 10/2009 – 5/2012 | No | No | -- |
| **TEAM LOVE CHILD LLC and ATE MY HEART INC.** | | | |
| 3/2006 – 9/2011 | No | Yes | No |
| 10/2011 – Present | No | No | -- |
| **INTERSCOPE** | | | |
| 7/2007 – 6/2011 | Yes | Yes | No |
| 7/2011 – Present | No | No | -- |
| **ISLAND DEF JAM** | | | |
| Payment upon contract singing | No | No | -- |
| Payment upon termination of contract | No | No | -- |
| **EMI** | | | |
| 7/2010 – 6/2011 | Yes | Yes | -- |
| 7/2011 – Present | No | No | -- |

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
ATTORNEYS AT LAW

Hon. Michael A. Hammer, U.S.M.J.
July 18, 2012
Page 5

Accordingly, defendants have failed to answer to Interrogatory 1 and failed to produce documents in response to Document Request 1, in violation of the May 25, 2012, order.

B.     The June 6, 2012 Order

The June 6, 2012, order stated:

> "ORDERED that, on or before **July 10, 2012**, the plaintiffs shall re-depose defendants Fusari at the Martin Luther King Jr. Courthouse, 50 Walnut Street, Newark, New Jersey 07101, and that said deposition shall be limited as follows:
>
> (A)   As a witness pursuant to Federal Rule of Civil Procedure 30(b)(6) regarding Topics 2, 3, 4, 6, and 7 of Schedule A of the Notice of Deposition for Rob Fusari Productions, LLC dated December 22, 2011…." (Dkt. No. 136 at 2.)

As explained below, defendants have failed to prepare to provide any meaningful testimony concerning topics 2, 3 and 4.

Topic 2 of the notice of deposition provided:

> "The amounts of money that both defendants have received after March 23, 2006 from UMG Recordings Inc. d/b/a Interscope Records ('Interscope') that relate in any way to Germanotta, as a result of any letters of direction of Team Love Child LLC ('TLC') to **Interscope** or otherwise, including but not limited to the letters of direction sent to Interscope by TLC on May 30, 2007 and October 14, 2008." (Dkt. No. 127-2 Ex. L at 3.)

Fusari failed to provide any meaningful testimony concerning Topic 2.  He testified on June 10, 2012:

> "Q.   Now, sitting here today, do you know the amount of money that you've received from Universal Music Group, doing business as Interscope Records, in connection with your work with Germanotta?
>
> A.    I don't know the exact amount, no.
>
> Q.    Do you know the approximate amount?
>
> A.    **I can't even approximate for you.**  I'm sorry.

Cole, Schotz, Meisel, Forman & Leonard, P.A.
Attorneys at Law

Hon. Michael A. Hammer, U.S.M.J.
July 18, 2012
Page 6

> Q.   Have you done anything prior to today's deposition to determine the amount of     money that you've received from Universal Music Group d/b/a Interscope Records in connection with your work with Germanotta?
>
> A.   I looked through some documents, but I couldn't find anything.  I looked online, but I couldn't locate anything.
>
> *   *   *
>
> Q.   And did you learn anything from looking online?
>
> A.   No.  Couldn't find anything.
>
> *   *   *
>
> Q.   **How much time did you spend trying?**
>
> A.   **I don't recall.**  I didn't add it up.
>
> Q.   About?
>
> A.   Can't even estimate.
>
> Q.   Five minutes?
>
> A.   Don't know.
>
> Q.   **Less than five minutes?**
>
> A.   **Don't know**."  (Tr. 7/12/ at  97:4 to 98:23)

Topic 3 of the notice of deposition provided:

> "The amounts of money that both defendants have received after March 23, 2006 from **Sony**/ATV Sounds LLC, Sony/ATV Songs LLC, and/or Sony/ATV Tunes LLC (collectively 'Sony') that were related in any way to Germanotta or a company in which she has an ownership interest (collectively 'Germanotta')." (Dkt. No. 127-2 Ex. L at 3.)

Cole, Schotz, Meisel, Forman & Leonard, P.A.
ATTORNEYS AT LAW

Hon. Michael A. Hammer, U.S.M.J.
July 18, 2012
Page 7

       Fusari failed to provide any meaningful testimony concerning Topic 3.  He testified on June 10, 2012:

> "Q.   How much revenue have you received from Sony as a result of your work with       Germanotta?
>
> A.   I don't remember the exact amount.
>
> Q.   What's your best estimate?
>
> A.   **I can't even estimate it.**
>
> Q.   Have you done any work prior to today's deposition to try to determine the exact       amount of money that you received from Sony in connection with your work with Germanotta?
>
> A.   I tried to look through some more records, but I couldn't find anything.
>
> Q.   Have you done anything since our last session of the deposition, which was April     20th of this year, to determine the precise amount of money that you've made from Sony in connection with your work with Germanotta?
>
> A.   Same answer.  I tried to look for documents, but I couldn't look at anything.
>
> Q.   **What did you try to do?**
>
> A.   **Look through some documents to find documents.  I couldn't find anything.**
>
> Q.   Where?
>
> A.   At my home.
>
> Q.   Did you go online to try to find any statements from Sony?
>
> A.   I don't recall.
>
> Q.   Have you received any more money from Sony since our last deposition on April 20th of this year?
>
> A.   I don't recall."  (Tr. 7/10/12 at 95:17 to 96:22)

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
ATTORNEYS AT LAW

Hon. Michael A. Hammer, U.S.M.J.
July 18, 2012
Page 8

Topic 4 of the deposition order provided:

"The amounts of money that both defendants have received for allowing any third party to publish any copyrighted work in which Stefani Germanotta was a joint author." (Dkt. No. 127-2 Ex. L at 3.)

Fusari failed to provide any meaningful testimony concerning Topic 4, which included **ASCAP**.  He testified on June 10, 2012:

"Q.   Now, sitting here today, do you know how much money you've received from ASCAP in connection with your work with Germanotta?

A.   Can't.  I'm not real sure of the amount.

Q.   Can you give me your best estimate?

A.   I really can't.  I wish I could.  I really do.

Q.   **Have you done anything to prepare for your testimony today with respect to the funds you've received from ASCAP?**

A.   Yes.

Q.   What have you done?

A.   **Looked through some documents, looked online at some ASCAP statements.  I just couldn't locate anything.**  I'm sorry.

Q.   When did you do that?

A.   Last couple weeks.  I don't recall the date.

Q.   And specifically what did you do?

A.   Looked through some documents, went online to the ASCAP website.

Q.   **How much time did you spend doing that?**

A.   **I don't recall.**

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
ATTORNEYS AT LAW

Hon. Michael A. Hammer, U.S.M.J.
July 18, 2012
Page 9

> Q.   Five minutes?
>
> A.   Don't recall.
>
> Q.   **Less than five minutes?**
>
> A.   **I'm sorry, I can't recall.**  I wish I could give you a better estimate."  (Tr. 7/10/12 at 99:18-100-21)

Fusari has failed to provide meaningful discovery over the last seven months concerning his revenues in connection with Germanotta.   On May 25, 2012, the Court remarked: ". . . it's the end of May, and we're still having discovery conferences about orders that I entered four months ago . . ."  (Dkt. No. 134 at 37:17:19.)   The month has changed, but the problem of Fusari refusing to comply with this Court's orders has not.

As a result of his repeated violations of the Court's orders, Fusari has inflicted meaningful prejudice to Starland and has caused a needless waste of this Court's resources. Starland is nevertheless reluctant to seek sanctions against defendants from Your Honor at this time because a motion for sanctions, including a default judgment, is <u>sub judice</u> before Judge Linares.  Starland nevertheless requests that the Court fashion some remedy under Fed. R. Civ. P. 37 to coerce Fusari to comply with its orders and provide the discovery that Starland needs for trial.

II.

The Plaintiff's Counsel continues his own struggles with discovery in a needless fashion that has been addressed by this Court time and again.  These discovery issues have already been addressed numerous times to this Court, and the Defendants repeatedly do whatever they can to comply with them – though never to the Plaintiff's Counsel's satisfaction.

It is respectfully submitted that the Defendants have done all that was necessary of them as ordered by the Court.  At the June 6, 2012 proceeding, the Court stated that Fusari could explain "why that specific information" about the amounts he received from work with Germanotta "cannot be provided" (June 6. 2012 Tr., 30: 12-13).  The Court stated:

> Now, if at the end of the day, Fusari says, I thought I could pull
> it down, I couldn't and here is why I was wrong, then that's
> what the plaintiff and defendants are going to have to live with.

(*Id*. at lns. 14-17).

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
ATTORNEYS AT LAW

Hon. Michael A. Hammer, U.S.M.J.
July 18, 2012
Page 10

        In accord with this, Fusari has gone back through his records, produced whatever he has, and has specifically informed the Plaintiff's Counsel that adding up the amounts of money he received from his work with Germanotta is something he is not adequately prepared to do or professionally capable of doing, nor something that the Plaintiff's Counsel cannot just as easily do.

        The Plaintiff's Counsel had the chance to ask Fusari whatever additional questions he had over and above those asked in previous discovery at his supplemental deposition.  In that regard, the Court stated, "[a]t a minimum, Mr. Dunnegan is entitled to question him about the new information that he's gotten" (June 6, 2012, 31: 18-19).  The Court noted that, if it started "to examine the subtext" of Document Request 15, "we're going to be here for a very long time, and you guys are never getting – the parties are never going to get out of fact discovery" (*Id*. at 59: 5-9).  It further stated, "[a]t some point, the fact discovery has got to be concluded" (*Id*. at 64: 23-24).  The fact is, the Plaintiff's Counsel does not want to accept that precept:  At some point, fact discovery much be concluded.

        With regard to the documents the Plaintiff's Counsel complains about not having, at the May 25, 2012 hearing, Defendants' Counsel told the Court that the Plaintiff has "everything from each source that Mr. Fusari obtained from" (May 25, 2012 33: 24-25).  The undersigned explained:

> Unfortunately, my client doesn't keep bookkeeping records that itemize what he gets from where.  He's a – I don't know how to describe it, but he's a very artsy person whereby he gets a check, he keeps the check, he throws away the – maybe looks at it, throws it away, disposes whatever he does with it, I'm not sure, but he doesn't keep  of what's broken down for what.

(*Id*. at 33: 3-9).  The undersigned further explained that the Plaintiff had "all the records" from the record companies and it had just become "harassing . . . now" (*Id*. at 35: 24-25).  It was further pointed out:

> . . . . There's 30 songs.  There's a variety of companies.  He's not a – an accountant or a professional.  It just doesn't get us from Point A to Point B that easily. And that's – where we had the response of, okay, he doesn't have these records at his fingertips, and then apparently at his deposition, he indicates, well, I guess, I could construct it.  But then it's the construction aspect that we're having the problem with.  It's not the request [ ]; it's the constructing of this – of these figures.  And especially, if you have the same material that he already has as well.  You have everything he has.  So we've given you – or you do have

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
ATTORNEYS AT LAW

Hon. Michael A. Hammer, U.S.M.J.
July 18, 2012
Page 11

> what you requested.  But now you're taking that request and
> going to another level and saying, okay, now, I want you to sit
> down and construct it for us.
>
> That's a different thing.  And then you're asking him to warrant
> that what he constructed is even accurate.  I mean, we've got an
> artist here, Your Honor.  We don't have an accountant.  So
> we're in – you know, it's not apples to apples.  The request was,
> Do you have something?  Okay.  Whatever we have, we'll give
> you, but we don't specifically have this, and to do it, would not
> be an easy task. . . .

(*Id*. at 39: 22 – 40: 18).

In this regard, the Court specifically stated that it was "not going to order him to do some separate accounting" (*Id*. at 43: 13-14).  It stated that it was "not going to make [Fusari] do an accounting.  He's not an accountant" (*Id*. at 45: 15-17).  It explained:  "I'm going to excuse you from having to actually do the addition.  Actually, it's a purely ministerial task that any party can do" (*Id*. at 56: 9-11).  Indeed, since Fusari was "turning over the documents, [the Court did not think] that [the addition] matters" (*Id*. at lns 20-22).

The Court was right:  The "addition" does not matter.  The Defendants have produced to the Plaintiff's Counsel whatever documents they have.  The Plaintiff's Counsel could choose to do the addition himself, and to accept the Defendants' efforts to comply with his repetitive and endless discovery demands.  Defendants would like to further point out in Plaintiff's Counsel's February 27, 2012 deposition of Jeffrey Gilman (Germanotta's accountant), Plaintiff's Counsel established the total amounts received by the Defendants for their work with Germanotta.

With specific regard to his re-deposition testimony, Fusari testified honestly that he could not give the Plaintiff's Counsel the information he was requesting.  There was no "guarantee" when the re-deposition was scheduled that such information must be forthcoming.  The Plaintiff's Counsel has – as exampled most grotesquely by his over 1,000 Requests for Admissions – tried to "get blood from a stone."  He expects the Defendants to make his client's case for her, when the fact of the matter is that he has had the requested information at his disposal – to the extent that the Defendants have had it – for a long time.

Cole, Schotz, Meisel, Forman & Leonard, P.A.
                    Attorneys at Law

Hon. Michael A. Hammer, U.S.M.J.
July 18, 2012
Page 12


        As this Court recognized, fact discovery will "never end" if the Plaintiff's Counsel
has it his way.  It is time to "call it a day."  The Defendants do not have any further
information to produce.

                                        Respectfully submitted,

                                        */s/Damian L. Albergo*

                                        Damian L. Albergo

DLA:jfv
cc:     James C. DeZao, Esq. (via E-mail)
        William Dunnegan, Esq. (via E-mail)