NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                )
WENDY STARLAND,                 )
                                )     Case No.: 2:10-CV-04930-JLL-MAH
        Plaintiff,              )
                                )     **OPINION**
        v.                      )
                                )
ROB FUSARI AND ROB FUSARI,      )
PRODUCTIONS, LLC,               )
                                )
        Defendants.             )
_____)

**LINARES**, District Judge.

     Pending before this court is Plaintiff, Wendy Starland's ("Starland") Motion for Sanctions pursuant to the Federal Rules of Civil Procedure 37 for failure to comply with two Court Orders. Defendant, Rob Fusari ("Fusari") submitted an Answer in response to the motion. The Court has considered the submissions of the parties and denies Starland's motion for the reasons set forth below.

**I.  BACKGROUND**

**1. Underlying Suit**

     Starland commenced the underlying action on September 24, 2010, to recover damages for breach of contract, breach of fiduciary duty, unjust enrichment, and quantum meruit. Dkt. 1. The dispute arises out of an alleged oral agreement between Starland and Fusari that resulted in the discovery and success of Stefani Germanotta, a.k.a., "Lady Gaga" ("Germanotta"). Id. at ¶ 9, 16. Fusari allegedly promised Starland that if Starland could find and introduce a unique female singer to Fusari, they would work together "to develop the singer and share equally in any revenues earned as a result." Id. at ¶ 9. Germanotta has since had a successful career as a singer, and to the date of this Opinion, Starland has not received compensation from Fusari in connection with Starland's services in finding Germanotta or Germanotta's development as a singer. Id. at ¶ 17.

**2. Discovery Dispute and Sanctions**

     Plaintiff's Motion originates from unresolved discovery disputes between the parties. On January 24, 2012, in a joint letter to Magistrate Judge Michael A. Hammer, Plaintiff moved to compel (1) Defendant's second set of interrogatories, (2) Defendant's third set of document requests, and (3) various depositions including one with a representative from Rob

Fusari Productions, LLC. Dkt. 93 at 1, 2, 3. Defendant stated that a response would be produced for each request, but that more time was needed to do so. [i] Id.

On January 25, 2012, Magistrate Judge Hammer granted Defendant time to produce the requests and filed an amended schedule ordering Defendants to provide discovery in response to Plaintiff's remaining written requests and complete all fact depositions by February 24, 2012, and March 16, 2012, respectively. Id. at 95. Thereafter, the parties were unable to come to a resolution. In a letter to Magistrate Judge Hammer, dated January 25, 2012, Defendant requested that Plaintiff's Counsel be ordered to revise the Requests for Admissions, which numbered in excess of 1,000. Id. at 94. In response, Defendant stated Plaintiff's Counsel was "wast[ing] time asking the same question in every possible way."[ii] Id. at 94:3:2. Plaintiff responded to the contrary, asking the court to require defendants to admit or deny the requests for admission. Dkt. 96 at 2:5. However, in a letter dated January 26, 2012, Plaintiff's counsel withdrew multiple requests for admissions.[iii] A litany of letters from both parties were thereafter received by the Court. Dkt. 97, 102, 103, 104, 106, 111. The letters indicated the parties' inability to come to an agreement in regard to various discovery matters.

On March 27, 2012, Magistrate Judge Hammer ordered Defendants, *inter alia*, to provide answers to Plaintiff's second set of interrogatories, produce documents in response to Plaintiff's third set of document requests, and depose Rob Fusari Productions, LLC. Dkt. 113. Subsequently, both parties were still unable to come to a resolution regarding the discovery disputes. In a letter to Magistrate Judge Hammer dated April 24, 2012, Plaintiff's counsel requested a briefing schedule regarding a Motion for Sanctions against defendants for failing to comply with the Court's March 27, 2012, order. Dkt. 115. In response, Defendant's counsel expressed his intention to cross-move for sanctions against "Plaintiff's Counsel for harassing [and] frivolous discovery requests which could not possibly have been made in good faith." Dkt. 116:1.

On May 18, 2012, Plaintiff filed a Notice of Motion pursuant to Federal Rule of Procedure 37 to sanction the defendants for intentionally violating the two Court Orders. Dkt. 127. Particularly, Plaintiff claims that (1) the Defendants failed to respond to Plaintiff's second set of interrogatories and third set of document requests; (2) Defendants failed to comply with the Court's January 25, 2012, Order, in violation of Rule 37(b); and (3) Defendants failed to comply with the Court's March 27, 2012, Order in violation of Rule 27(b). Pl's Br. 4, 20. Plaintiff asks this Court to enter default judgment against Defendant for violation of the Court's orders. Alternatively, Plaintiff asks for monetary sanctions under Federal Rule of Civil Procedure 37. Pl's Br. 34.

## II. LEGAL STANDARD

**1. Rule 37 Sanctions.**

The District Court has broad discretion in determining whether sanctions are appropriate over discovery matters. Ware Commc'ns v. Rodale Press, Inc., No. CIV.A.95-5870, 2002 WL 89604 at *2 (E.D. Pa. January 23, 2002) *aff'd by* Ware v. Rodale Press, Inc., 322 F.3d 218 (3d Cir. 2003). Federal Rule of Civil Procedure 37(b)(2)(vi) authorizes a district court to sanction a party's failure to comply with a discovery order by "rendering a default judgment against the disobedient party." [iv] Ware, 322 F.3d at 221. In Poulis v. State Farm Fire and Casualty Co., the Third Circuit established six factors that must be balanced in determining whether a sanction of dismissal is justified:

> (1) the extent of the *party*'s personal *responsibility;* (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith;* (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions;* and (6) the *meritoriousness* of the claim or defense.

747 F.2d 863, 868 (3d Cir. 1984). The Court is not required to find each factor in order to justify a dismissal. Hicks v. Feeney, 850 F.2d 152, 156 (3d Cir. 1988); Azkour v. Aria, 330 Fed. Appx. 373, 375 (3d Cir. 2009). The factors "should be weighed by the district courts in order to assure that the 'extreme' sanction of dismissal . . . is reserved for the instances in which it is justly merited." Ware, 322 F.3d at 221-22 (quoting Poulis, 747 F.2d at 870). When a litigant's conduct makes adjudication of the case impossible, a balancing of the Poulis factors is unnecessary. McLaren v. New Jersey Dept. of Educ., 462 Fed. Appx. 148, 149 (3d Cir. 2012).

However, a court may not order an action dismissed for a party's failure to comply to a discovery order when the noncompliance is "due to inability, and not willfulness, bad faith, or any fault of the petitioner." Societe Internationale v. Rogers, 357 U.S., 197, 212, 78 S. Ct. 1087,1096, 2 L.Ed.2d 1255 (1958). Dismissals are sanctions of last resort, Poulis 747 F.2d at 869, and are considered "extreme" by the Supreme Court. Harris v. City of Philadelphia, 47 F.3d 1311, 1330 n.18 (3d Cir. 1995). Moreover, they should only be "reserved for cases comparable to the 'flagrant bad faith' and 'callous disregard' exhibited in National Hockey League.[v] Id.

### III. DISCUSSION

Plaintiff moves for default judgment against Defendant for failure to comply with the Court's January 25, 2012, and March 27, 2012 Orders. Dkt. 95, 113. The Third Circuit has often noted that the sanction of dismissal is "disfavored absent the most egregious circumstances." U.S. v. $8,221,877.16 in U.S. Currency, 330 F.3d 141, 161 (3d Cir. 2003) (citing Poulis 747 F.2d at 867-68). The Court acknowledges the fact that Defendant did not "provide [] responses to plaintiff's remaining written discovery requests on or before February 24, 2012," in accordance with the January 24, 2012, Order. Dkt. 95. Although this failure to comply favors dismissal to a degree, the relevant inquiry is whether Defendant's actions reach the "egregious" threshold under the circumstances. With respect to the factors set forth by Poulis, the Court finds that dismissal is unwarranted.[vi]

In the case *sub judice*, Plaintiff claims that Defendants intentionally violated the Orders in bad faith. We disagree and do not perceive this to be a situation where Plaintiff blatantly refused to cooperate with discovery demands. See Azkour v. Aria, 330 Fed. Appx. 373, 376 (3d Cir. 2009) (affirming dismissal of complaint where plaintiff "blatantly" refused to provide discovery because district court would not act on plaintiff's motions); see also Aruanno v. Booker, 397 Fed. Appx. 756, 758 (3d Cir. 2010) (affirming dismissal of complaint where plaintiff showed willfulness to violate rules of discovery and Court's orders as evidenced by a letter stating he refused to respond to the discovery requests). To the contrary, Defendant has made clear his intention to resolve the discovery dispute in good faith after the January 24, 2012, order. See Dkt. 94 ("[M]y office made a significant attempt to begin responding to the Plaintiff's Second and Third Requests . . . ."); Dkt 97 ("Defendants will endeavor to respond to these Requests, casting appropriate Objections thereto as Counsel sees fit."). Likewise, after the March 27, 2012, Order, Defendant had kept the Court

informed of why full compliance with the Order was not possible under the circumstances. Dkt. 114.[vii]

Defendant's reasoning for not obeying the Court's Orders is that the relevant documents have been provided to Plaintiff's counsel, and Plaintiff's demands have been "duplicative, voluminous, irrelevant, and otherwise objectionable." Def.'s B. 5, 23. We find some merit to Defendant's statement as evidenced in the January 26, 2012, letter to the Court. Dkt. 96. In the letter, Plaintiff conceded that some of the admission requests were duplicates and ultimately withdrew a number of them. Dkt. 96. As noted by the defendant, one of the requests was "literally identical word-for-word." Dkt. 94. Moreover, with the number of additional requests totaling over 1,000, Dkt. 94, the Court is compelled to find that the delay in the discovery process, pursuant to the Court's Orders, can be attributed to both parties.

To reiterate, sanctions are reserved for the most egregious violations. See e.g., Wachtel v. Health Net, Inc., 239 F.R.D. 81, 91, 97 (D.N.J. 2006) (dismissing complaint where "dozens and dozens" of orders were ignored, Plaintiff never produced relevant documents within a three-year-long discovery period, and Plaintiff did not begin the search for documents until it was beneficial to their side). In the instant case, the discovery disputes between the parties have been debated ad nauseam and have indeed obstructed the litigation process. However, because the motion for sanctions largely derives from the parties' quibbling and inability to amicably resolve these discovery matters, rather than Defendant's disregard for the judicial process, we find default judgment to be an inappropriate sanction. See Transportes Aereos de Angola v. Ronair, Inc., 104 F.R.D. 482, 498 (D. Del. 1985) ("According to the Federal Rules of Civil Procedure, the guidelines for discovery are based on the assumption that voluntary compliance with the rules by the parties is to be expected. Normally, the court will not be involved."). Accordingly, this Court finds that the appropriate solution is not to preclude Defendant from the possibility of having his day in court. See United States v. $8,221,877.16 in U.S. Currency, 330 F.3d 141, 161 (3d Cir. 2003) ("[W]e have always . . . recommended the resolution of any doubts in favor of adjudication on the merits." (citing Scarborough v. Eubanks, 747 F.2d 871, 878 (3d Cir. 1984)). Defendant's failure to comply with the Court's Orders do not justify the severe measure of default judgment.

**1. Request for Monetary Sanctions**

Alternatively, Plaintiff argues that she is entitled to monetary sanctions if the Court will not impose default judgment. Pursuant to Rule 37, this Court is authorized to impose monetary sanctions caused by the recalcitrant party's abuse of the discovery process, including payment of "reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or *other circumstances make an award of expenses unjust*." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added). In reference to the Court's earlier finding that Plaintiff contributed to delay of the discovery process, we find imposing monetary sanctions to be inappropriate.

**CONCLUSION**

The Court, having reviewed the Defendant's failure to comply with obligations under the Federal Rules of Civil Procedure and the Court's January 25, 2012, and March 27, 2012, Orders, nonetheless denies Plaintiff's motion for default judgment. The Court additionally denies Plaintiff's request for monetary sanctions. An appropriate Order accompanies this Opinion.


DATED: August 9, 2012

s/ Jose L. Linares_____
JOSE L. LINARES
U.S. DISTRICT JUDGE

---

[i] In the joint letter dated January 24, 2012, defendant agreed to produce the following responses:

"The Defendants agree to response [sic] to the Plaintiff's Second Set of Interrogatories No. 1. The parties do not agree on the timing of this disclosure, however. As current counsel only received the file on this matter in January 2012, consel has agreed to produce this response within thirty (30) days." Dkt. No. 93 at 2.

"The Defendants have also agreed to provide documents responsive to Request No. 1 of the Plaintiff's Third Set of Document Requests. Once again, however, counsel has requested thirty (30) days to do so." Id. at 3.

"The Defendants agree to produce Rob Fusari or another appropriate person for deposition of the Production company within forty-five (45) days."

[ii] In a letter dated January 25, 2012, Defendant provided a list of Plaintiff's discovery requests and Defendant's objections. A non-exhuastive list is provided below for reference:

Request No.

Nos. 1 ("Wendy Starland was a professional singer"); and 3 ("Wendy Starland earned money by singing")

Objection

Though Plaintiff's Counsel refused to admit it, the dictionary definition of "professional is earning money at something, and therefore, the Plaintiff is asking the same thing twice ("Wendy Starland was a professional singer": "Wendy Starland was a professional singer"). His defense to asking these questions (that "professional" may have different interpretations) is senseless because if "professional has a meaning other than "making money" at something, asking the first question ("professional") leaves open the possibility that the Defendants "interpret" it to mean something else. Additionally, the Defendants would have no personal knowledge about how the Plaintiff earned money The Plaintiff should ask whether she mad emoney as a singer and not whether she was "professional."

Requested Result: Eliminate No. 1 or 3.

>       Request No.
>
>       Nos. 87 and 89
>
>       Objection
>
>       Literally identical word-for-word, with the exception of the typo in No. 89 ("a points").
>
>       Requested relief: Eliminate no. 87 or 89
>
>       Request No.
>
>       No. 93 ("Rob Fusari reached an agreement with Wendy Starland that involved Wendy Starland finding a singer")
>
>       Objection
>
>       Asked numerous times, using slightly different language.
>
>       Requested relief: Eliminate No. 93.

Dkt. 94.

[iii] The January 26, 2012, letter states in relevant part, "We withdraw the *duplicative requests* numbered 89, 407, 411, 414, 417, 439, 505, 556, 630, and 713 in the third set.  However, requests for admission 358, 386, 445, 511, and 531 are not duplicates of requests 357, 385, 444, 510 and 530, and all should be answered."  Dkt. 96 (emphasis added).

[iv] Federal Rule of Civil Procedure 37(b) provides in relevant part:

>    (2)  Sanctions in the District Where the Action Is Pending.
>
>    (A) For Not Obeying a Discovery Order.  If a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or (37)(a), the court where the action is pending may issue further just orders.  They may include the following:
>
>     (vi) rendering a default judgment against the disobedient party

Fed. R. Civ. P. 37(b).

[v] In National Hockey League v. Metropolitan Hockey Club, Inc., the Supreme Court authorized dismissal of a claim where the plaintiff had failed to adhere to promises and commitments made to the Court.  477 U.S. 639, 640, 96 S. Ct. 2778, 2779 (1976).  Moreover, the plaintiffs were warned a number of times that "failure to provide information could result in the imposition of sancons [sic]" under Fed. R. Civ. P. 37.   477 U.S. at 641, 96 S. Ct. at 2780 (1976).

[vi] With regard to the six factors in Poulis, Plaintiff first contends that Defendant is personally responsible for the failure to comply with the Court's orders. Pl.'s Br. 24.  Particularly, Plaintiff states there is direct evidence that Fusari (i) failed to produce a relevant Manuscript, (ii) failed to adequately prepare his Rule 30(b)(6) deposition, and (iii) failed to truthfully respond to Interrogatory 1 concerning revenue from Defendant's relationship with Germanotta.  Id.  In response, Defendant

---

argues the manuscript was destroyed and is nonetheless irrelevant to the litigation. Def.'s Br. 22. Further, Defendant states that responsibility falls back on Plaintiff's Counsel largely in part because of the "duplicative, voluminous, irrelevant, and otherwise objectionable" discovery demands. Def.'s Br. 23, 24.

With regard to the second factor, whether there was prejudice caused by the failure to comply with the Court's orders, Plaintiff avers that Defendant (i) substantially increased Plaintiff's time and expense of the discovery process and (ii) compromised Plaintiff's ability to try the case on the merits. Pl.'s Br. 27, 28. Defendant again retorts that the delay was caused by Plaintiff's excessive discovery demands. Def.'s Br. 23.

Likewise, and in regard to the third prong, Plaintiff notes Defendant's failure to respond to discovery requests demonstrates a "substantial history of causing delay." Pl.'s Br. 29. Again, Defendant's defense directs the Court back to Plaintiff's conduct; in response, defendant states that the delay was caused by Plaintiff's focus on "the great majority of . . . discovery on facts that have absolutely no relevance to the Plaintiff's claims." Pl.'s Br. 25.

Plaintiff alleges in respect to the fourth factor that any delays in the discovery process were intentionally made in bad faith by Defendant. Id. at 30. Particularly, Plaintiff alleges, *inter alia*, that "Defendants literally made up the story that they could not determine the amount of money defendants made from Germanotta" and "Defendants reneged on the promises contained in the January 24, 2012, joint letter to respond to interrogatory 1 and document request." Pl.'s Br. 30. Defendant states that Plaintiff is "seek[ing] answers to the same questions in numerous different ways." Def.'s 16.

With respect to the fifth factor, Plaintiff states that "[a] sanction other than a default judgment would therefore allow defendants to obtain an advantage over Starland at any trial on the merits." Pl.'s Br. 32. Defendant notes that this is the "Plaintiff's first Motion for Sanctions and yet Plaintiff's Counsel seeks the most draconian remedy" and therefore the claim that "no other sanction" would be effective is unwarranted. Def.'s Br. 14.

The meritoriousness of a claim or defense is determined from the face of the pleadings. Bedwell Sons v. International Fidelity Ins. Co., 843 F.2d 683, 696 (3d Cir. 1988). A claim will be "deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or constitute a complete defense." Poulis, 747 F.2d at 869-70. Plaintiff argues that her claims have merit because "Starland has adequately pled her claims" and "Fusari has not moved to dismiss." Pl.'s Br. 33. Defendant responds again by, among other things, directing the the "frivolous discovery requests." Def.'s Br. 25. Defedat argues that the fact Plaintiff is making irrelevant discovery requests demonstrates that they have the case has little merit and is simply "grasping at straws."

[vii] In a letter addressed to the Court, dated April 9, 2012, Defendant explained his inability to comply with the March 27, 2012 Order.

> "As the Court is aware, the Plaintiff consented to the undersigned's taking of Lapidot's deposition, which was scheduled to be held in Claifornia on March 15, 2012, at 1pm. That morning, I was alerted to the fact that my client was unable to get a flight out to Los Angeles to attend the deposition. Both my client and I understood (only the night before) that the Plaintiff was going to be present at Lapidot's deposition. In fact, Plaintiff's Counsel did not inform my office of his client's presence at this scheduled deposition until the evening beforehand. . . . Additionally, I was scheduled to appear at, and did attend, an arbitrartion on the same date at the Morris County Courthouse, in the matter of *Stone v. Gerardo*, MRS-L-2777-19, which I was unable to reschedule.