**LAW OFFICES OF JAMES C. DEZAO, P.A.**
322 Route 46 West
Suite 120
Parsippany, New Jersey 07054
(973) 808-8900
*Attorney for Defendant*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WENDY STARLAND,<br><br>    Plaintiff(s)<br><br>vs.<br><br>ROB FUSARI AND ROB FUSARI PRODUCTIONS, LLC,<br><br>    Defendant(s) | CIVIL ACTION<br>CASE NO.: 2:10-CV-04930-JLL-CCC |

**THE DEFENDANTS' REPLY TO THE PLAINTIFF'S OPPOSITION TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Defendants, Rob Fusari ("Fusari") and Rob Fusari Productions, LLC (collectively, "the Defendants"), submit this Memorandum in Reply to the Opposition of the Plaintiff, Wendy Starland ("Starland" or "the Plaintiff"), to the Defendants' Motion for Summary Judgment dismissing her Complaint. For the reasons set forth here and in their moving papers, the Defendants' Motion should be granted and the Plaintiff's Complaint dismissed.

**Argument**

**I.   The Plaintiff's Failure to Adequately Support Numerous Statements of Disputed Material Fact Militates in Favor of a Grant of This Motion.**

The failure of the non-moving party to produce such affirmative evidence to

create issues in dispute material to the claims presented will result in the grant of judgment in favor of the moving party. *See, Hankins v. Temple Univ.,* 829 F.2d 437, 440 (3d Cir. 1987).

Here, the Plaintiff has submitted numerous, largely duplicative (repetitive) statements of purported disputed material fact in opposition to the Defendants' Motion for Summary Judgment. Several of them, however, are either inappropriately argumentative/conclusory or unsupported by the documents they cite. First, (1)(b) contains a first sentence that is not adequately supported by record citation, in violation of Local Rule 56.1(a). Second, (1)(g) states a legal conclusion that is inappropriate, which was unsupported by the documents cited. Third, (1)(h) contains a first sentence that was not followed by record citation, but represents argument. Fourth, (1)(i) and (j) cites to inadmissible character evidence. Fifth, (1)(l) represents inadmissible argument/conclusion; and is inadmissible insofar as it attempts to establish that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Additionally, (2)(a) represents an argument inappropriate in a statement of material fact; (3)(c) contains a second sentence that is not supported by the materials cited; (4)(c) is not supported by the documents cited; (5)(a) is a legal argument/conclusion of law; (5)(c) contains a legal argument/conclusion and unsupported by the cited document; (5)(d) contains a legal argument and unsupported by the cited document; (5)(e) is not supported by the cited documents; (6)(a) is not supported by the cited document; (6)(b) contains a legal conclusion and misconstrues the cited testimony; (7)(a) contains a sentence not supported by the referenced evidence and that is unsupported; (7)(b) contains a legal argument that is not supported; (7)(c) contains a statement not supported by any record evidence; (8)(f) is unsupported by the record evidence; (9)(b) cites evidence that is not admissible into evidence; (10)(e) contains a statement that is not supported by the record evidence; (10)(f) is unsupported by the cited documents;

2

(11)(b) contains a sentence that is not adequately cited by the cited evidence; and (11)(h) cites to inadmissible evidence.

This overwhelming number of the Plaintiff's statement of material facts in dispute rallies in favor of the grant of the Defendants' Motion.

## II. No Genuine Issues of Material Fact Exists as to Whether an Enforceable Contract Existed Between the Parties Because the Plaintiff is Bound By Her Own Sworn Testimony.

The Plaintiff first erroneously argues that the "Defendants do not dispute that a genuine question of fact exists as to whether Starland and Fusari intended to be legally bound" (Starland Opp., p. 3). However, this Court has held that a contract "is enforceable if the parties agree on essential terms, and manifest an intent to be bound by those terms." *United States v. Lightman*, 988 F.Supp. 448, 458 (D.N.J. 1997). Indeed, the Plaintiff puts the figurative "cart before the horse" in suggesting that the Defendants do not dispute having an intent to be bound. The New Jersey Supreme Court has stated that an enforceable contract is created if the parties "agree on essential terms and manifest an intention to be bound by those terms." *West Caldwell v. Caldwell*, 26 N.J. 9, 24-25, 138 A.2d 402, 410 (1958). Thus, because Starland testified that the parties did <u>not</u> agree on the essential terms of the contract, any mutual asset to be bound never arose. Indeed, in a stroke of irony, in a case the Plaintiff herself cites, *Nissen v. Rozsa*, 2011 WL 2517134 (D.N.J.)(Plaintiff's Opposition, p. 4), this same principle was recognized. 2517134 at 6.

The Plaintiff's argument that "courts disfavor holding that an agreement is unenforceable for lack of specificity" (Plaintiff's Opp., p. 4), is reliant upon a case that belies that proposition. In *Nissen v. Rozsa, supra*, the court recalled the black letter law that where parties "do not agree on one or more essential terms . . . courts generally hold that the agreement is unenforceable."

3

2011 WL 2517134 at 7. It is only where parties "have not agreed in respect of <u>a</u> term . . . that" such term may be supplied by the court so that the contract survives. *Id.* [**emphasis added**]. Moreover, *Laveson v. Warner Mfg. Corp.*, 117 F.Supp. 124 (D.N.J. 1953)(Plaintiff's Opp., p. 5), the defendant "conceded at oral argument that it intended to enter into a binding contract." 117 F.Supp. at 127. It was under those circumstances that the court "should strive to assist [such] intention." *Id.*

The Plaintiff argues that, *inter alia*, the contract between the parties cannot be voided because she "fully performed" (Plaintiff's Opposition, p. 5). However, according to Starland's own testimony, she <u>did</u> <u>not</u> fully perform:

A.    *******


(Defendants' Statement of Material Facts, ¶7).

Thus, Starland testified that "full performance" would actually have meant that she would song-write with the artist 

She testified that Thus, according to Starland's own admissions, she *did not* "full perform" her portion of the alleged "contract," and her counsel's argument to that extent is fallacious.

Furthermore, the law the Plaintiff cites in support of her position that "[c]ourts especially disfavor finding an agreement unenforceable due to lack of specificity if one party has fully performed" (Plaintiff's Opposition, p. 5), is not dispositive. There, the court specifically

4

considered "[e]mployment contracts" involving "a promotion within a relatively small office." 278 F.2d at 86. Moreover, there, the plaintiff commenced work in 1941 and worked at least until 157. *Id.* at 83.

Likewise, *Lynch v. New Deal Delivery Service, Inc.*, 974 F.Supp. 441 (D.N.J. 1997)(Plaintiff's Opp., p. 5), dealt with an employee who had fully performed her work for the company.

The Plaintiff's excitement over *Lo Bosco v. Kure Eng'g, Ltd.*, 891 F.Supp. 1020 (D.N.J. 1995)(Plaintiff's Opp., pp. 6-7), is misplaced. While she claims that this "case is even stronger than *Lo Bosco*" because, there, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ However, there, the agreement between the joint venture included a provision that, *inter alia*, "for any company purchased up to the value of $1,000,000, plaintiff would be given a 50% ownership share in that company." 891 F.Supp. at 1027. Moreover, the alleged contract there had six (6) very distinct parts – far more than the Plaintiff has alleged here.

The Plaintiff's attempt to avoid the fact that she testified that the parties failed to reach consensus on major issues (*see*, Plaintiff's Opp., p. 8) is hollow. She claims that these major issues are irrelevant because they "never arose in the dealings" (*Id.*). The Plaintiff's argument is thus that, while these terms were never agreed to, they should be disregarded because the parties never "reached" them in the evolution of the alleged contract. And the "elephant in the room" she cannot avoid is that she had absolutely no ability to testify about the <u>amount of profits</u> she was to receive, how the profits were to be divided, what the profits were to be from, and how the profits were to be arrived at. This fact *alone* dooms the Plaintiff's Breach of Contract claim.

Moreover, the Plaintiff grossly misstates the record when she writes that the Defendants "deny" that she worked ███████████████████████████████████████████ ███████████████████████████████████████ As presented at length in the Defendants' Opposition to the Plaintiff's Motion for Summary Judgment to dismiss the Defendants' Affirmative Defense of Unclean Hands, ██████████████████████████████ ███████████████████████████████████████████████ ███████████████████████ Furthermore, it should be noted that the Plaintiff's argument presumes something she herself belies: that a party's denial of a fact is not "evidence." Since the only "evidence" she offers in support of her claim to have done this work is in the form of her declaration or interrogatory answers, the same argument can be leveled at her: She has advanced no "evidence" supporting her ████████████████████████████ ██████████████████████

Nor is the Plaintiff's reliance upon *Lo Bosco, supra*, helpful to her position (Plaintiff's Opp., p. 8). She seems to argue in a legal "vacuum" when she claims that this case is analogous to that – where "terms concerning the parties' duties and plaintiff's share in the event of the purchase of a company worth more than $1,000,000" was irrelevant because the company at issue "was only worth $700,000." 891 F. Supp. at 1027. ████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ Starland now wants to "dumb down" her alleged contract with Fusari and claim that ████ ████████████████████████████████████████████████████ Her attempted likening of this case – where all of the above scenarios were implicated – to one in

6

which an unresolved term was *obviously* never applicable is erroneous. Moreover, in *Lo Bosco*, the "first phase of the agreement" between the parties was specific enough "to determine the obligations of both sides," 891 F. Supp. at 1028, whereas the obligations of both parties here cannot be ascertained. Indeed, in *Lo Bosco*, both parties "were to share in ownership of the acquired company and its profits." *Id.* Here, the Plaintiff was unable to testify about who would even make *decisions* should disagreements arise.

Nor is Starland's invitation for this Court to "infer reasonable terms from the circumstances" (Plaintiff's Opp., p. 9) is not a feasible one. Indeed, the Court would have to infer *all* of the terms if the Plaintiff's testimony were to be believed: It would have to decide whether the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Indeed, in contrast, in *Lo Bosco*, the "[i]ndefiniteness" "was cured" by actions of the plaintiff. 891 F.Supp. at 1028.

It is furthermore ironic that the Plaintiff cites *United States v. USX Corp.*, 68 F.3d 811 (3d Cir. 1995)(Plaintiff's Opp., 9), for the proposition that a joint venture "may be implied based upon the conduct of the parties." Indeed, it was the *Plaintiff* who testified that she took actions directly *adverse* to Fusari, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

The Plaintiff's "solution" to the conundrum that is her testimony about what her ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Thus, the Plaintiff wants the Court to conclude that Fusari would have agreed to ▓▓▓▓▓▓▓▓▓▓▓▓▓

7

████████████████████ for an indefinite period of time – *before* taxes and regardless of any of the costs associated with the project. Such "solution" is simply nonsensical. The Plaintiff's defense of this theory is unpersuasive. Indeed, given the savvy the Plaintiff has alleged Fuari had in the music business, it belies any sense of logic to find it "reasonable" for him to ████████████████████████████████████████████████

Starland's reliance on ████████████████████████████ ████████████████████████████ Indeed, the testimony she quotes at pages 12-13 of her Opposition reeks of hearsay (████████████████████████ ████████████████████ would be inadmissible at trial, and therefore fails to present potent opposition to an entry of summary judgment. *Barr v. County of Clarion*, 417 Fed. Appx. 178, 180 n. 4 (3d Cir. 2011)("hearsay statements can be considered on a motion for summary judgment if they are capable of admission at trial"); *Palfrey v. Jefferson-Morgan Sch. Dist.*, 355 Fed. Appx, 590, 593, n. 1 (3d Cir. 2009)(hearsay evidence in a deposition submitted in opposition to motion for summary judgment may be considered if the declarant could later present testimony that would be admissible at trial).

The Plaintiff's argument about Fusari's "pattern" ████████████████ ████████████ is unsound because in not <u>one</u> of the examples ████████████  ████████████████████████████████████████████████ Thus, splitting "producer points" on *one song* is entirely distinguishable; as is splitting 50/50 revenue with an artist from production of the *artist's* own album (Plaintiff's Opp., p. 14). Likewise, ████████ ████████████████████████████████████████████ (*Id.*) is ghastly dissimilar from the "windfall" split the Plaintiff alleges here.

8

### III. No Genuine Issues of Material Fact Exist as to the Plaintiff's Breach of Fiduciary Claim.

As argued in the Defendants' moving papers, the Plaintiff's claim to a fiduciary duty based upon an alleged joint venture fails because she is unable to successfully allege the elements of a joint venture.

Nor does the alleged "intent" (Plaintiff's Opp., p. 15) save the Plaintiff's claim. Indeed, missing from her analysis is any acknowledgement that she took actions directly contrary to Fusari's interests and therefore inconsistent with a "joint venture" she now alleges. In a stroke of irony, ██████████████████████████████████████████████

██████████████████████████████████████████████

██████ Indeed, the Plaintiff now cites from a Complaint in which Fusari alleged that he

██████████████████████████████████████████████

██████████████████████████████████ Her low-handed attack on Fusari at this juncture for allegedly ██████████████████████████ that she would ████████████████████████ s a transparent attempt to ignore her own admissions that belie the existence of a joint venture. First, this testimony is not admissible because it is highly prejudicial and wholly irrelevant to this matter. As such, it is insufficient grounds for opposing summary judgment. But, second and more importantly, this testimony is simply inflammatory and is ████████████████████████████

██████████████████████████ The testimony Starland cites is from was prompted by a question about whether ████████████████████████

██████████████████████████████████████████████

██████████████████████████████████ This testimony in no way, shape or form goes to the ████████████████████████████████

9

██████████████████████████████████████ Indeed, she has presented no evidence on this nexus whatever.

The Plaintiff's argument that an "agreement to share losses is not essential to find a joint venture" (*Id.* at p. 18) ironically cites to *Lo Bosco*, which lists another element the Plaintiff is missing: "A right of mutual control or management of the enterprise . . . ." 891 F. Supp. at 1027. In any event, the Plaintiff attempts to avoid her own testimony – and hence her legal problem – by claiming "the parties did in fact agree to share their losses by each absorbing the expenses that they each incurred in connection with the project" (Plaintiff's Opp., p. 18) falls flat. Indeed, it was the Plaintiff who testified that she would have otherwise been out at the ███████ ████████████████████████████████████████████████████ Nor has she offered *any* evidence as to what "expenses" she actually "absorbed."

Finally addressing ██████████████████████████████████ professionally, Plaintiff's Counsel now claims that █████████████████████ ████████████████████████████████████████████ Plaintiff's Opp., p. 18). Without any citation to record evidence, her counsel continues: "In any event, Fusari has no basis to complain that this resulted in a breach" because ██████████████████ ███████████████████████████████████████████████████████ ██████████████ However, what Plaintiff's Counsel misses is that Fusari is not claiming a "breach" – but, rather, a failure of *creation*. █████████████████████ ██████████████████████████████████ It is a literal red herring for Plaintiff's Counsel to confuse the Court by suggestion Fusari is attempting to "demonstrate[ ] a material breach as a matter of law" or an "[un]timely action for rescission" (*Id.* at p. 19). Plaintiff's Counsel – either by neglect or design – ignores that Fusari's Motion was not for

10

███████████████████████████████████ His suggestion that Fusari is seeking to stake his own new claim in his papers is frankly head-scratching.

Plaintiff's Counsel also ignores the evidence the Defendants presented in their Motion regarding "equal playing fields" (Plaintiff's Opp., p. 20): It was the Plaintiff's <u>own expert</u> who testified to that fact; trying to ignore it, Plaintiff's Counsel points to the amount of money Fusari was making versus Starland's desire for a "break" (*Id.*).

## IV. There Are No Genuine Issues of Material Fact as to the Plaintiff's Unjust Enrichment Claim.

The Plaintiff claims that the fact that she spent "zero" hours solely searching for a singer for Fusari does not defeat her claim for unjust enrichment because ███████████████ ███████████████████████████████████████████████████ What she fails to address is the fact that she did not actually expend any effort she would not otherwise have expended in ███████████████████

The Plaintiff's independent reasons for going to the club on the night she ███████ ███████ coupled together with the fact that she sought ███████████████████ ███████████ (Plaintiff's Opp., p. 23), militates against a finding that Fusari failing to compensate her would be "unjust."

Moreover, Plaintiff's Counsel contradicts his earlier argument when he attacks the Defendants for failing to present "authority that sustaining a loss is a necessary element of a claim for unjust enrichment" (*Id.* at p. 24): Earlier, he claimed that what saved the breach of fiduciary claim was that the parties both "absorbed" their own "expenses." Here, he is tacitly conceding that Starland did not actually suffer any expenses. More importantly, however, Plaintiff's Counsel apparently missed the portion of the Defendants' Memorandum citing law for the proposition that enrichment to a party "is not unjust [where] it did not result in any loss or

11

harm to [the plaintiff]." *Cameco, Inc. v. Gedicke*, 299 N.J. Super. 203, 218, 690 A.2d 1051, 1058 (App. Div. 1997)(*citing, Restatement (Second) of Agency, 404A, illustrations 1, 2 (1957)*). Thus, the Plaintiff's failure to offer any alleged losses she sustained as a result of the purported work she performed allegedly at Fusari's behest dooms her claim.

Nor does the Plaintiff address her previous complaints about suffering the same "injustice" at the hands of other artists, such as Gavin DeGraw. She has thus made similar claims against at least three (3) people: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

## V. There Are No Genuine Issues of Material Fact as to Starland's Quantum Meruit Claim.

The Plaintiff ignores the glaring insufficiencies in her experts' opinions presented at length in the Defendants' Motion. Instead, she claims, *inter alia*, that one of her experts opined her services to be worth approximately 10 to 15 percent of Fusari's revenue; and that "Fusari offered to pay ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Plaintiff's Opp., p. 25).

What Plaintiff's Counsel ignores entirely is Steiger's inadequate understanding of the facts of the case, and hence insufficient basis upon which to opine about the value of Starland's alleged services: He did not know what the Plaintiff actually did, as he based his opinion on just the materials Plaintiff's Counsel provided to him; he was unable to give the reasonable hourly rate of a musician, songwriter, or manager; and his opinion was based on the assumption that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ He testified that he had no authorities as to value whatever; that this was a situation he had never seen before; and that it was "honestly worth something."

12

Plaintiff's Counsel also ignores the inadequacies of Cutarell's opinion, that it took someone with a "special gift" to identify ▮▮▮▮▮▮▮▮ star, without giving any direction as to how much such "gift" would be worth.

### Conclusion

For the reasons set forth here and in their moving papers, the Defendants' Motion for Summary Judgment should be granted and the Plaintiff's Complaint dismissed.

                                              Law Offices of James C. DeZao, P.A.

Dated: 10/31/12            By: _____
                                              JAMES C. DEZAO, ESQ.