**LAW OFFICES OF JAMES C. DEZAO, P.A.**
322 Route 46 West
Suite 120
Parsippany, New Jersey 07054
(973) 808-8900
*Attorney for Defendant*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WENDY STARLAND,<br><br>Plaintiff(s)<br><br>vs.<br><br>ROB FUSARI AND ROB FUSARI PRODUCTIONS, LLC,<br><br>Defendant(s) | CIVIL ACTION<br>CASE NO.: 2:10-CV-04930-JLL-CCC |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN DISPUTE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Defendants, Rob Fusari ("Fusari") and Rob Fusari Productions, LLC (collectively, "the Defendants"), submit this Response to the Plaintiff's Statement of Material Facts in Dispute (with notations on her response to the Defendants' Statement of Material Facts) in Opposition to the Defendants' Motion for Summary Judgment.

Notations on Plaintiff's Response to Defendants' Statement of Material Facts

Defendants' Statement of Material Fact #5 (DSMF): The Defendants object to a portion of the Plaintiff's response. In opposition to this Statement of Material Fact, Plaintiff's Counsel impermissibly makes a statement not follows by record citation: "Counsel for defendants, throughout the deposition, attempted to have Starland agree with his slanted characterization of

facts that Starland had already testified about in detail" (Plaintiff's Statement of Material Facts, p. 4). Pursuant to Fed. R. Civ. P. 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."

This statement by Plaintiff's Counsel fails to cite to record evidence in support, represents an argument, and is therefore inadequate to dispute the material fact.

Defendants' Statement of Material Fact #6 (DSMF): The Defendants object to a portion of the Plaintiff's response. In opposition to this Statement of Material Fact, Plaintiff's Counsel impermissibly makes a statement not followed by any reference to record support. In particular, Plaintiff's Counsel states, "the contract could last for any length of time that revenue resulted from the singer that Starland identified. Defendants never moved to compel further testimony from Starland." These are purported statements of fact and are not adequately supported by the record.

Defendants' Statement of Material Fact #11 (DSMF): The Defendants object to a portion of the Plaintiff's response. In opposition to this Statement of Material Fact, Plaintiff's Counsel admits only "portions" of the statement of fact, but fails to deny any of the remainder. Therefore, Plaintiff's Counsel has admitted the entirety of it.

Defendants' Statement of Material Fact #20 (DSMF): Plaintiff's Counsel inappropriately "denies" this statement solely because he "qualifies" that the testimony was about "revenue, not profit." However, he otherwise admits that she gave this testimony

Defendants' Statement of Material Fact #47 (DSMF): The Plaintiff objects to this Statement without bothering to respond, claiming it cites to inadmissible testimony. However, the cited testimony represents an exception to the hearsay rule (even though Plaintiff's Counsel does not specify why the statement is not admissible) because it is an excited utterance.

Defendants' Statement of Material Fact #49 (DSMF): The Defendants object that this statement is not admissible in evidence without any explanation. This objection is baseless and unsupported; the statement represents an expert opinion as to the contract allegedly formed between the parties and what terms are normally present for such contracts.

Defendants' Statement of Material Fact #50 (DSMF): The Plaintiff claims that this statement is inadmissible in evidence without offering any dispute thereto. Moreover, this statement is admissible because it represents expert opinion as to the Plaintiff's testimony about the alleged contract between the parties.

<u>Reply to Defendants' Statement of Material Facts In Dispute</u>

**1. Fusari and Starland intended to enter into an enforceable agreement with respect to the following: If Starland found a certain**

**then o his production company, Fusari and Starland would work together to develop and write songs for the artist, and,**

a. In or about July of 2005, Fusari told Starland, in substance, that he knew Starland was out and about on the scene in New York, and that he would like her to search for the female equivalent to the lead single of The Strokes." [sic]

**Admit.**

b. In or about July of 2005, Fusari stated to Starland, in substance, that he was looking for someone bold, energetic, edgy, and "someone you can't take your eyes off" and who "just has that it factor." He also described the artist he was looking for as the female equivalent to the lead singer of The Strokes" (the "Strokes Girl").

**Admit the second sentence, which is adequately supported by citation. Deny the first sentence, which is not followed nor supported by a record citation, in violation of Local Rule 56.1(a)("In addition, the opponent may also furnish a supplemental statement of disputed material facts, in separately numbered paragraphs citing to the affidavits and other documents submitted in connection with the motion, if necessary to substantiate the factual basis for opposition"). The documents cited do not support the first sentence (Dunnegan Exhibit C, ¶¶12-14; Exhibit D, pp. 13-14; Exhibit K, No. 24). None of these exhibits contain the statement "In or about July of 2005, Fusari stated to Starland, in substance, that he was looking for someone bold, energetic, edge, and 'someone who you can't take your eyes off; and who 'just had that it factor.'" It is therefore not properly supported.**

c. Fusari admits that, "At a face to face meeting before March 23, 2006, Rob Fusari told Wendy Starland that he was looking for a female artist to develop, and Rob gave Wendy a description of the type of artist he was looking for."

**Admit.**

d. During their conversation about the Strokes Girl, Fusari asked Starland to search for the Strokes Girl.

       **Admit the documents cited support this claim.**

e. During their conversation about the Strokes Girl, Fusari told Starland that if Starland found this artist and brought her to Fusari, and if Fusari determined that the artist was satisfactory to him, then Fusari would sign that artist to his production company, and Fusari and Starland would work together to develop and write songs for the artist. Fusari also told Starland that, if Fusari received any revenue as a result of the project, 

**Admit that the cited documents support this claim.**

f. During their conversation about the Strokes Girl, Starland accepted Fusari's proposal.

**Qualify. The cited documents do not state that Starland "accepted" Fusari's "proposal," but, rather, that she said, "I'll all for it" (Dunnegan Exhibit F, 25: 17-19), or, alternatively, that she "accepted Fusari's offer" (Dunnegan Exhibit K, No. 24).**

g. During their conversation about the Strokes Girl, Starland and Fusari intended to enter into an enforceable contract.

**Object and deny. This is a legal conclusion and hence inappropriate in a statement of material fact (56.1(a)["Each statement of material facts shall . . . not contain legal argument or conclusions of law"]). Furthermore, this legal conclusion is unsupported by the documents cited because they do not and cannot assert that <u>Fusari</u> "intended to enter into an enforceable contract" (Dunnegan Exhibit F, pp. 23-25; Exhibit K, No. 24).**

h. Fusari admits that at least some of his conversation occurred. He said to Starland, in December of 2011, "I told you that if you knew any artist [I] would be more than happy to work with you writing songs for that artist."

**Objection. The first sentence is not followed by record citation, but represents an argument inappropriate in a Statement of Material Facts (56.1(a)["Each statement of material facts shall . . . not contain legal argument or conclusions of law"]).**

**Admit the remainder.**

i.

**Objection. Any o** **Dunnegan Exhibit G, 49: 1-6).** ***See, generally, Reyes v. Missouri Pac. R. Co.,*** **589 F.2d 791 (5th Cir. 1979).**

**Admit that the cited materials make this assertion.**

j. from both Starland and Fusari, that Starland and Fusari had agreed to share the revenue resulting from the Strokes Girl project 50-50.

**Objection.** **hearsay (Fed. Civ. P. 56(c)(2)("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence"). Admit that the cited testimony supports this claim.**

k. Fusari admits that, in March of 2006, [redacted] Starland knew that Fusari had been searching for months for a dynamic female rock-n-roller with garage band chops to front an all girl version of the Strokes."

**Admit.**

l. Fusari commonly entered into 50-50 deals. Fusari split 50-50 with Falonte Moore the producer points on the song "Bootylicious." Fusari, and his girlfriend, Jayne DiGregorio, split 50-50 with another ownership in a record label. Fusari split 50-50 with Tom Kafafian revenue from the production of Kafafian's album. Fusari split 50-50 with Kafafian the revenue from the production of Kafafian's album. Fusari split 50-50 with Kafafian the revenue from Kafafian's publishing rights in the song "Disco Heaven."

**Objection. The first sentence in this statement represents impermissible legal argument/conclusion (56.1(a)["Each statement of material facts shall . . . not contain legal argument or conclusions of law"]). Moreover, this statement as a whole is inadmissible insofar as it attempts to establish that Fusari had a pattern and practice of entering into 50-50 agreements. *See, generally, Reyes v. Missouri Pac. R. Co.,* 589 F.2d 791 (5th Cir. 1979). Finally, the agreements exampled are all distinguishable and hence irrelevant to an analysis of the one in this case (e.g., 50-50 split on one song; 50-50 split on record label; 50-50 split with artist for production of his album; 50-50 split with Kafafian revenue from Kafafian's publishing rights to one song).**

  **2. The agreement that Starland and Fusari entered into was sufficiently specific to enforce.**

a. Starland and Fusari agreed upon specific material terms.

**Objection. This is an argument of law that is inappropriate in a statement of material fact (56.1(a)["Each statement of material facts shall . . . not contain legal argument or conclusions of law"]). Furthermore, the cited exhibits do not state that the parties agreed to "material terms" (Dunnegan Exhibit F, 23-26; Exhbiit K, No. 24).**

b. Starland and Fusari discussed that all revenue that the project generated would be divided equally.

**Admit the cited materials support this statement.**

**3. Starland performed her obligations under the contract.**

a. Starland identified [redacted]

**Admit the cited materials support this statement.**

b. Starland did everything that Fusari has asked her to do related to the Strokes Girl project.

**Admit.**

c. Starland worked individually with [redacted]

**Admit the cited materials support the first statement.**

**Deny the second. The cited support does not support the conclusion asserted; rather, Starland testified that "[t]o the best of [her] knowledge" Fusari was "kept apprised**

**of what" [redacted] (Dunnegan Exhibit F, 67: 8-15).**

d. Starland [redacted]

**Admit the cited materials support this statement.**

e. Fusari and [redacted] sessons at Fusari's studio [redacted]

**Admit the cited materials support this statement.**

**4. Fusari breached his contract with Starland by not sharing the [redacted]**

a. [redacted]

**Admit the cited materials support this statement.**

b. Starland has not received a penny from Fusari.

**Qualify that the cited sources state that Starland has not received any compensation from Fusari; not "a penny" (Dunnegan Exhibit A, ¶17; Exhibit B, ¶17).**

c. By working with [redacted]

**Deny. The first document cited in support of this statement nowhere contains the assertion that Starland "could have used" [redacted] (Dunnegan Exh. K, No. 8, pp. 6-18); and the same is true for the second (*Id.* at Exhibit L, No. 15, pp. 23-27).**

**5. Fusari owed Starland a fiduciary duty as a result of their agreement.**

a. Fusari and Starland's agreement concerning the Strokes Girl constituted a joint venture.

**Objection. This is a blatant legal argument/conclusion of law and inappropriate in a statement of material facts (56.1(a)["Each statement of material facts shall . . . not contain legal argument or conclusions of law"]). Moreover, the cited documents are inadequate to establish this legal conclusion because they represent testimony of the Plaintiff, who is unqualified to give an opinion as to the legal nature of the alleged agreement (Dunnegan Exhibit F, 23-26; Exhibit K, No. 24; Exhibit L, No. 3).**

b. In 2005, Fusari was making millions of dollars a year. In contrast, Fusari thought that Starland was "lost" in the music business, and looking for a "break."

**Admit these documents establish these facts.**

c. During the Strokes Girl conversation, Starland and Fusari agreed to share their losses by each absorbing the expenses that each incurred in connection with the project.

**Objection. The statement that the parties "agreed to share their losses" represents a legal argument/conclusion inappropriate in a statement of material facts (56.1(a)["Each statement of material facts shall . . . not contain legal argument or conclusions of law"]). Furthermore, this statement is impeached by the cited document, which states that "[n]either party anticipated any potential losses in connection with that contract, . . . ." (Dunnegan Exhibit L, No. 3, p. 3).**

d. During the Strokes Girl conversation, Fusari and Starland intended that they would each have control in the Strokes Girl project because they discussed, and agreed, that they would work together to develop the Strokes Girl.

**Objection. This statement contains legal argument inappropriate in a statement of material fact (56.1(a)["Each statement of material facts shall . . . not contain legal argument or conclusions of law"]) insofar as it concludes, "Fusari and Starland intended that they would each have control in the Strokes Girl project, . . . ." Indeed, the documents cited do not support the conclusion that the parties intended that they would "each have control"; but, rather, that "they would work together to develop the singer" (Dunnegan Exhibit L, No. 3, p. 3); [redacted] (*Id.* at No. 15, pp. 23-27; Exhibit K, No. 8, pp. 6-18); and that the parties would "work together" to develop the artist (Dunnegan Exhibit F, 23-26).**

e. Starland and Fusari intended that Fusari would enter into a standard production deal with the artist that Starland identified, that would leave Fusari – and Starland – sharing 50 percent of the revenue from the artist that Starland identified.

**Objection. This statement contains legal argument inappropriate in a statement of material fact (56.1(a)["Each statement of material facts shall . . . not contain legal argument or conclusions of law"]) insofar as it concludes that the parties "intended that Fusari would enter into a standard production deal with the artist that Starland identified, . . . ." without defining "standard production deal" or pointing to documents or testimony sufficient to indicate what one was (*c.f.*, Dunnegan Exhibit F, 23-25, Exhibit K and L [Starland testifying/giving details about purported agreement without specifying it was "standard production deal"]). More importantly, one of the documents the Plaintiff cites in support actually belies her claim (Dunnegan Exhibit C, ¶¶22-26)(referencing a**

[redacted]

[redacted] . . .” without describing it). Thus, aside from the conclusory nature of this statement, none of the documents support it.

**6. Fusari breached his fiduciary duty to Starland.**

a. [redacted]

**Qualify. The supporting, cited document actually states that [redacted].” (Dunnegan Exhibit C, ¶24).**

b. Fusari breached his fiduciary duty to Starland because h[redacted]. Fusari, among other things, [redacted]

**Objection. This statement contains legal argument inappropriate in a statement of material fact (56.1(a)["Each statement of material facts shall . . . not contain legal argument or conclusions of law"]) insofar as it concludes a cause of action exists based on certain facts. Aside from that, the testimony quoted is taken out of context, is inadmissible in evidence on the grounds of undue prejudice, irrelevance, and improper character evidence (Fed. Civ. P. 56(c)(2)("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence"). Moreover, this testimony is in no way tethered to any obligations Fusari allegedly had to Starland and breached. Indeed, the cited materials establish only that [redacted]**

**[redacted] (Dunnegan Dec., Exhibit K, No. 8, pp. 12-13), [redacted]**

7. **Fusari's breach of fiduciary duty has caused Starland damages.**

a. Although Starland and Fusari intended that Fusari would enter into a standard production deal [redacted] Fusari instead entered into a joint venture [redacted]

**Deny. The first clause of this statement represents argument that is not supported by the referenced evidence. Indeed, the important part of the statement is that the parties allegedly '[redacted] unnegan Exhibit C, ¶24).**

b. Because Fusari and Starland agreed that Fusari would share the revenue resulting from the Strokes Girl project equally, Fusari's decision to [redacted]

**Objection. This statement represents legal argument unsupported by record citation (56.1(a)["Each statement of material facts shall . . . not contain legal argument or conclusions of law"]). Specifically, there is no support for the claim that "Fusari's decision [redacted]**

c. To pursue his rights

**Deny. The first clause of this sentence is unsupported by any record evidence, as the cited evidence merely confirms that reason why (Dunnegan Exhibit H, 140).**

**8. Fusari received a benefit as a result of Starland's actions.**

a. Starland identified

**Admit.**

b. Starland persuaded Fusari

**Admit that the cited document makes this claim.**

c. It took a high level of skill for Starland to

**Admit that the cited document makes this claim.**

d. Starland did everything that Fusari has asked her to do related to the Strokes Girl project.

**Admit that the cited documents makes this claim.**

e. Starland worked individually with both Fusari

**Admit that the cited documents makes this claim.**

    f. Starland's work [redacted]

**Deny. The quoted documents do not support this conclusory statement; rather, they detail efforts Starland [redacted] hey do not specify that it make [redacted] int about which Starland would be unable to attest (Dunnegan Exhibit K, No. 8; Exhibit L, No. 15).**

g. [redacted]

**Admit that the cited documents makes this claim.**

**9. Fusari's retention of the benefit he received as a result of Starland's actions would be unjust.**

a. Starland expected payment from Fusari for her work related to the Strokes Girl project, in the event that that the Strokes Girl project generated revenue.

**Admit that the cited documents make this claim.**

b. Fusari knew that Starland expected payment from him for her work related to the Strokes Girl project.

**Objection and deny. This is not admissible evidence because Starland cannot possibly know, or be permitted testify about, Fusari's knowledge. Furthermore, neither of the documents she cites speak to what Starland knew Fusari knew (Dunnegan Exhibit F, 23-24; Exhibit K).**

c. [redacted]

**Admit that the cited documents makes this claim.**

d. In or about late 2008 or early 2009, Fusari and Starland spoke by phone regarding Starland's compensation. [redacted]

**Admit that the cited documents makes this claim.**

e. At some point in time, Fusari intended to compensate Starland in connection with the Strokes Girl Project.

**Admit that the cited documents make this claim.**

f. Starland has not received any compensation from Fusari.

**Admit that the cited documents make this claim.**

**10. Starland performed services for Fusari.**

a. Starland [redacted]

**Admit that the cited documents make this claim.**

b. Starland persuaded Fusari to [redacted]

**Admit that the cited documents make this claim.**

c. It took a high level of [redacted]

**Admit that the cited documents make this claim.**

d. Starland did everything that Fussari has asked her to do related to the Strokes Girl project.

**Admit that the cited documents make this claim.**

  e. Starland worked individually [redacted]

**Admit the cited materials support the first statement.**

**Deny the second. The cited support does not support the conclusion asserted; rather, Starland testified that "[t]o the best of [her] knowledge" Fusari was "kept apprised [redacted] (Dunnegan Exhibit F, 67: 8-15).**

f. [redacted]

**Deny. The quoted documents do not support this conclusory statement; rather, they detail efforts [redacted] They do not specify that [redacted] unable to attest (Dunnegan Exhibit K, No. 8; Exhibit L, No. 15).**

**11. Starland performed those services for Fusari in good faith, expecting compensation from Fusari for her services.**

a. In or about July of 2005, Fusari told Starland, in substance, that he knew Starland was out and about on the scene in New York, and that he would like her to assist him by searching for the female equivalent to the lead singer of The Strokes.

**Admit the cited materials support the first statement.**

b. In or about July of 2005, Fusari stated to Starland, in substance, that he was looking for someone bold, energetic, edgy, and "someone who you can't take your eyes off" and who "just has that it factor." He also described the artist he was looking for as the female equivalent to the leading singer of The Strokes.

**Admit the second sentence, which is adequately supported by citation. Deny the first sentence, which is not followed nor supported by a record citation, in violation of Local Rule 56.1(a)("In addition, the opponent may also furnish a supplemental statement of disputed material facts, in separately numbered paragraphs citing to the affidavits and other documents submitted in connection with the motion, if necessary to substantiate the factual basis for opposition"). The documents cited do not support the first sentence (Dunnegan Exhibit C, ¶¶12-14; Exhibit D, pp. 13-14; Exhibit K, No. 24). None of these exhibits contain the statement "In or about July of 2005, Fusari stated to Starland, in substance, that he was looking for someone bold, energetic, edge, and 'someone who you can't take your eyes off; and who 'just had that it factor.'" It is therefore not properly supported.**

c. Fusari admits that, "At a face to face meeting before March 23, 2006, Rob Fusari told Wendy Starland that he was looking for a female artist to develop, and Rob gave Wendy a description of the type of artist he was looking for."

**Admit.**

d. During their conversation about the Strokes Girl, Fusari asked Starland to search for the Strokes Girl.

**Admit the documents cited support this claim.**

e. During their conversation about the Strokes Girl, Fusari asked Starland to search for the Strokes Girl.

**Admit the documents cited support this claim.**

e. During their conversation about the Strokes Girl, Fusari told Starland that if

Starland found this artist and brought her to Fusari, and if Fusari determined that the artist was satisfactory to him, then Fusari would sign that artist to his production company, and Fusari and Starland would work together to develop and write songs for the artist. Fusari also told Starland that, if Fusari received any revenue as a result of the project, Fusari would share that resulting revenue 50-50 with Starland.

**Admit that the cited documents support this claim.**

f. During their conversation about the Strokes Girl, Starland accepted Fusari's proposal.

**Qualify. The cited documents do not state that Starland "accepted" Fusari's "proposal," but, rather, that she said, "I'll all for it" (Dunnegan Exhibit F, 25: 17-19), or, alternatively, that she "accepted Fusari's offer" (Dunnegan Exhibit K, No. 24).**

g. Starland expected payment from Fusari for her work related to the Strokes Girl project, in the event that that the Strokes Girl project generated revenue.

**Admit that the cited documents make this claim.**

h. Fusari knew that Starland expected payment from him for her work related to the Strokes Girl project.

**Objection and deny. This is not admissible evidence because Starland cannot possibly know, or be permitted testify about, Fusari's knowledge. Furthermore, neither of the documents she cites speak to what Starland knew Fusari knew (Dunnegan Exhibit F, 23-24; Exhibit K).**

**12. Fusari accepted services that Starland performed for him.**

a. Defendants admit that on or about March 23, 2006, [redacted]

**Admit.**

b.

**Admit.**

c.

**Admit the cited materials support this statement.**

**13. Starland has produced evidence concerning the reasonable value of the services she provided Fusari.**

a.

**Admit the cited materials support this statement.**

b. Starland has submitted evidence as to the value of her services in the following scenarios: (i) assuming that she did no more i) assuming that

**Admit that Starland has admitted documents speaking to this.**

c. Starland has a draft "Finders Participation Agreement" that Fusari offered her in May of 2007 to introduce her to introduce [sic] other singers to him. That document includes compensation terms.

**Admit.**