**COLE, SCHOTZ, MEISEL,**
  **FORMAN & LEONARD, P.A.**
A Professional Corporation
Court Plaza North - 25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
(201) 489-3000
(201) 489-1536  Facsimile

**DUNNEGAN & SCILEPPI LLC**
350 Fifth Avenue
New York, New York 10118
212-332-8300
212-332-8301 Facsimile

Attorneys for Plaintiff Wendy Starland

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                        :
WENDY STARLAND,                         :
                                        :
                                        :
           Plaintiff,                   :
                                        :   CIVIL ACTION
vs.                                     :   CASE NO.: 2:10-CV-04930-JLL-MAH
                                        :
ROB FUSARI AND ROB FUSARI               :
PRODUCTIONS, LLC,                       :
                                        :
           Defendants.                  :
_____  :


**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF HER**
**MOTION FOR SUMMARY JUDGMENT**

Table of Contents

Table of Authorities ................................................................................................................. ii

Argument on Affirmative Defenses ........................................................................................ 1

I.  AS A MATTER OF LAW, THE NEW YORK STATUTE OF FRAUDS
    DOES NOT APPLY BECAUSE THE ORAL CONTRACT WAS CAPABLE
    OF BEING FULLY PERFORMED WITHIN ONE YEAR ................................................ 1

II. AS A MATTER OF LAW, UNCLEAN HANDS IS NOT AN AFFIRMATIVE
    DEFENSE TO ANY OF STARLAND'S CLAIMS ............................................................ 3

Argument on Counterclaims .................................................................................................. 4

I.  FUSARI HAS FAILED TO DEMONSTRATE THE EXISTENCE OF A
    GENUINE ISSUE OF MATERIAL FACT ON HIS DEFAMATION CLAIM ................. 5

    A.  The Court Should Dismiss Fusari's Libel Claim ...................................................... 5

    B.  The Court Should Dismiss Fusari's Slander Claim Because Fusari Has
        No Evidence Of Special Damages Resulting From The Alleged Slander ............... 5

II. FUSARI HAS FAILED TO DEMONSTRATE THE EXISTENCE OF A
    GENUINE ISSUE OF MATERIAL FACT ON HIS SLANDER PER SE CLAIM ........... 6

    A.  The Alleged Statements Concerning Fusari's Romantic Relationship
        With Germanotta And Digregorio Are Not Slander Per Se ..................................... 6

    B.  The Alleged Statements That Fusari Did Not Immediately
        Recognize Germanotta's Talent Does Not Impute Misconduct .............................. 6

III. FUSARI'S FALSE LIGHT CLAIM FAILS BECAUSE FUSARI HAS
     OFFERED NO EVIDENCE TO CREATE A GENUINE ISSUE OF
     MATERIAL FACT AS TO STARLAND'S STATE OF MIND ...................................... 7

Argument on Constructive Trust ............................................................................................ 7

I.  DEFENDANTS MISSTATE THE RELIEF STARLAND SEEKS IN THIS
    ACTION AND ON THIS MOTION .................................................................................. 7

II. DEFENDANTS DO NOT DISPUTE THE PREMISES OF STARLAND'S
    ARGUMENT THAT THE COURT SHOULD IMPOSE A CONSTRUCTIVE
    TRUST IF THE JURY FINDS LIABILITY FOR A PORTION OF
    DEFENDANTS' FUTURE REVENUE ........................................................................... 8

III.      DEFENDANTS' ARGUMENTS CONCERNING THE ABSENCE
OF IRREPARABLE HARM AND A RES HAVE NO MERIT ........................................9

      A.      Even If A Constructive Trust Required Proof Of Irreparable Harm,
Starland Can Demonstrate That Irreparable Harm ....................................................9

      B.      Defendants Contracts With Third Parties Securing Their
Future Revenue Are A Res ......................................................................................10

Conclusion............................................................................................................................……10

Table of Authorities

**Cases**

Celotex Corp. v. Catrett,
   477 U.S. 317, 106 S. Ct. 2548 (1986) ..........................................................................4

Cron v. Hargro Fabrics, Inc.,
   91 N.Y.2d 362, 670 N.Y.S.2d 973 (1998) .................................................................... 1

D & N Boening, Inc. v. Kirsch Beverages, Inc.,
   63 N.Y.2d 449, 483 N.Y.S.2d 164 (1984) .................................................................... 1

Dr. Zhu Inv. Trade Corp. v. Natural Food Imp. USA, Inc.,
   A-0514-11T3, 2012 WL 3236111 (App. Div. Aug. 10, 2012) ..................................... 3

Flanigan v. Munson,
   175 N.J. 597 (N.J. 2003) ............................................................................................... 9

Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.,
   847 F.2d 100 (3d Cir. 1988) ......................................................................................... 9

Freedman v. Chem. Const. Corp.,
   43 N.Y.2d 260, 401 N.Y.S.2d 176 (1977) ............................................................. 1, 2

Gelman v. Buehler,
   91 A.D.3d 425, 936 N.Y.S.2d 154 (1st Dep't. 2012) .................................................. 2

Holloway v. King,
   361 F. Supp.2d 351 (S.D.N.Y. 2005),
   aff'd, 161 F. App'x 122 (2d Cir. 2005) ....................................................................... 2

Kalfin v. U.S. Olympic Comm.,
   209 A.D.2d 279, 618 N.Y.S.2d 724 (1st Dep't. 1994) ............................................... 3

Morton v. Beyer,
   822 F.2d 364 (3d Cir. 1987) ...................................................................................... 10

Murphy v. CNY Fire Emergency Services, Inc.,
   225 A.D.2d 1034, 639 N.Y.S.2d 628 (4th Dep't. 1996) ............................................. 2

Nakamura v. Fujii,
   253 A.D.2d 387, 677 N.Y.S.2d 113 (1st Dep't. 1998) ............................................... 2

Nat'l State Bank v. Fed. Reserve Bank of New York,
   979 F.2d 1579 (3d Cir. 1992) ......................................................................................4

Nat Nal Serv. Stations v. Wolf,
    304 N.Y. 332 (1952) ................................................................................................... 1

N. Shore Bottling Co. v. C. Schmidt & Sons, Inc.,
    22 N.Y.2d 171, 292 N.Y.S.2d 86 (1968) .................................................................. 2

Rudbart v. N. Jersey Dist. Water Supply Com,
    127 N.J. 344 (N.J. 1992) ............................................................................................ 9

Schmidt v. Maiorino,
    209 A.D.2d 683, 619 N.Y.S.2d 139 (2nd Dep't. 1994) ............................................. 3

Snepp v. United States,
    444 U.S. 507, 100 S. Ct. 763 (1980) .................................................................. 9, 10

Sprenger v. Trout,
    375 N.J. Super. 120, 866 A.2d 1035 (App. Div. 2005) ...................................... 4,8,9

**Statutes**

NY CLS Gen Oblig § 5-701 ................................................................................................ 1

**Rules**

Fed. R. Civ. P. 56 ................................................................................................................ 4

**Reply Argument on the Affirmative Defenses**

Defendants oppose Starland's motion for summary judgment only for two of their five affirmative defenses -- the Statute of Frauds and unclean hands.  The Court should therefore, at a minimum, grant Starland's motion on defendants' three remaining affirmative defenses.

I.   AS A MATTER OF LAW, THE NEW YORK STATUTE OF FRAUDS
     DOES NOT APPLY BECAUSE THE ORAL CONTRACT WAS
     CAPABLE OF BEING FULLY PERFORMED WITHIN ONE YEAR.

Even if New York law applies, Fusari cannot create a genuine issue of material fact as to whether the Statute of Frauds applies.  Fusari tacitly concedes that the New York Statute of Frauds concerning business opportunities does not apply.   Fusari instead relies only upon NY CLS Gen Oblig § 5-701.

The New York State Court of Appeals has consistently held that this section applies only if the agreement could not possibly be performed within one year, however impractical such performance within that time frame might be.  In Nat Nal Serv. Stations v. Wolf, 304 N.Y. 332 (1952), the highest court in New York held: "If performance be possible within the year, however unlikely or improbable that may be, the agreement does not come within the proscription of the statute." 304 N.Y. at 335 (collecting cases).  See also Cron v. Hargro Fabrics, Inc., 91 N.Y.2d 362, 366, 670 N.Y.S.2d 973, 975 (1998);  D & N Boening, Inc. v. Kirsch Beverages, Inc., 63 N.Y.2d 449, 455, 483 N.Y.S.2d 164, 166 (1984);  Freedman v. Chem. Const. Corp., 43 N.Y.2d 260, 265, 401 N.Y.S.2d 176, 180 (1977).

Even if the Court went beyond the case law and examined the practicalities, there are at least two practical scenarios under which the agreement between Starland and Fusari would have been fully performed within one year.  First, Fusari, on his own initiative and without Starland, could have found the "Strokes Girl," signed her to a production deal, and notified Starland that

their contract was complete because Fusari found the "Strokes Girl" and Starland did not, all within one year. See N. Shore Bottling Co. v. C. Schmidt & Sons, Inc., 22 N.Y.2d 171, 292 N.Y.S.2d 86 (1968).

Second, Starland could have found the "Strokes Girl," Fusari could have signed her to a production contract, and they could have written and produced an album, signed a contract with a record label, and sold their rights to the record label for a single, lump sum, all within one year. See Freedman v. Chem. Const. Corp., 43 N.Y.2d 260, 401 N.Y.S.2d 176 (1977); Gelman v. Buehler, 91 A.D.3d 425, 936 N.Y.S.2d 154 (1st Dep't. 2012). See also Nakamura v. Fujii, 253 A.D.2d 387, 389, 677 N.Y.S.2d 113, 115 (1st Dep't. 1998).

\* \* \* \* \*

Defendants' cases are not from the New York State Court of Appeals. In any event, defendants' cases are distinguishable because the plaintiff did not present a scenario under which the agreement could have been fully performed within one year.

Holloway v. King, 361 F. Supp.2d 351 (S.D.N.Y. 2005), aff'd, 161 F.App'x 122 (2d Cir. 2005), is distinguishable because all the parties contemplated that even if Tyson had only one fight, third parties would be paying King money for years with respect to that one fight. Id. at 356-57.

Murphy v. CNY Fire Emergency Services, Inc., 225 A.D.2d 1034, 639 N.Y.S.2d 628 (4th Dep't. 1996), held that an oral agreement that is terminable at will is outside the Statute of Frauds. The Court held unenforceable only a severable provision of the agreement that provided for commissions to be paid indefinitely. Id. at 1035, 630-31.

Schmidt v. Maiorino, 209 A.D.2d 683, 619 N.Y.S.2d 139 (2nd Dep't. 1994), is distinguishable because it involved a promise to pay annual bonuses for years into the future. Id. at 683-84, 140.

Kalfin v. U.S. Olympic Comm., 209 A.D.2d 279, 618 N.Y.S.2d 724 (1st Dep't. 1994), is distinguishable because a third party would be paying commissions over a four year period. Id. at 280, 725 ("The documentation before the IAS Court indicates that the underlying contract between Penney and defendant could not be terminated by defendant within one year absent Penney's breach.").

II.  AS A MATTER OF LAW, UNCLEAN HANDS IS NOT AN AFFIRMATIVE DEFENSE TO ANY OF STARLAND'S CLAIMS.

Defendants tacitly concede that unclean hands is not a defense to Starland's breach of contract, breach of fiduciary duty, or unjust enrichment claims. (Dkt. 280 at 8/35)  Defendants limit their argument concerning the affirmative defense of unclean hands to Starland's quantum meruit claim.  (Id.)  The Court should therefore, at a minimum, dismiss defendants' affirmative defense of unclean hands with respect to Starland's breach of contract, breach of fiduciary duty, and unjust enrichment claims.

For the quantum meruit claim, defendants' argument confuses (i) the relief Starland seeks with (ii) the nature of her claim.  While courts may refer to quantum meruit as either an equitable or a legal claim, it is the type of relief Starland seeks, not the nature of Starland's claim, that determines the availability of the defense of unclean hands. Dr. Zhu Inv. Trade Corp. v. Natural Food Imp. USA, Inc., A-0514-11T3, 2012 WL 3236111 (App. Div. Aug. 10, 2012)("Here, plaintiff's complaint sought money damages, and no equitable remedy was demanded. Accordingly, asserting unclean hands as an affirmative defense would have been inappropriate in defendant's answer as well as in his motion for reconsideration.")(Emphasis added.); Sprenger v.

3

Trout, 375 N.J. Super. 120, 136, 866 A.2d 1035, 1045 (App. Div. 2005)("[U]nclean hands is an equitable remedy and is not an available defense to claims for monetary relief."). Defendants' factual arguments concerning Starland's activities (Dkt. 280 at 9-15/35) are not dispositive.

### Reply Argument on the Counterclaims

Fusari's opposition papers demonstrate a fundamental misunderstanding of the obligations of the parties in making and responding to a summary judgment motion. Under Fed. R. Civ. P. 56, if the moving party meets its obligation by stating that the non-moving party with the burden of proof has no evidence to support the relevant issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986); Nat'l State Bank v. Fed. Reserve Bank of New York, 979 F.2d 1579, 1581-82 (3d Cir. 1992). Fed. R. Civ. P. 56(c)(1)(A) then requires the non-moving party to go beyond the pleadings and offer evidence to demonstrate specific facts showing that there is a genuine issue for trial.

Fusari did not follow these rules. Although Fusari has the burden of proof on his counterclaims, and although Starland as the moving party had no obligation under Fed R. Civ. P. 56 other than assert to the absence of evidence to support those counterclaims, Fusari argues "the Plaintiff has failed in a shocking way to support her Motion for Summary Judgment. Specifically, she failed to meet her burden of establishing the *absence* of disputed issues of material facts repeated in her statement." (Dkt. 280 at 16/35)

Accordingly, Fusari consistently rests on an alleged deficiency in Starland's motion papers, and repeatedly fails to offer admissible evidence sufficient to create a genuine issue of material fact on critical issues in those counterclaims. For example, in response to Starland's statement of undisputed facts numbered 24, 25, 27, 28, 29, 31, 33 and 34, Fusari merely refers to the pleading in (i) this case and (ii) his New York action against Germanotta. (Dunnegan Dec.

4

Ex. I, J, and D.) These pleadings do not provide admissible evidence that supports Fusari's denial of Starland's statements. Summary judgment on Fusari's counterclaims is therefore appropriate for this reason alone.

I.     FUSARI HAS FAILED TO DEMONSTRATE THE EXISTENCE OF A GENUINE ISSUE OF MATERIAL FACT ON HIS DEFAMATION CLAIM.

    A.     <u>The Court Should Dismiss Fusari's Libel Claim.</u>

Fusari concedes that he did not plead a claim for libel. (Dkt. 280 at 17/35) To prevent Fusari from attempting to assert a libel claim at trial, the Court should grant Starland summary judgment to the extent that Fusari's defamation claim sounds in libel.

    B.     <u>The Court Should Dismiss Fusari's Slander Claim Because Fusari Has No Evidence Of Special Damages Resulting From The Alleged Slander.</u>

Fusari concedes that his slander claim requires proof of special damages, meaning a monetary loss. (Dkt. 280 at 12/35) Fusari nevertheless has failed to offer any admissible evidence that he has sustained any special damages as a result of the alleged slanderous statements that Starland made to the author of the book <u>Poker Face</u>.

Fusari's only argument concerning a change in Fusari's financial situation was that Tom Hamilton, at some point, stopped hiring Fusari. (Dkt. 280 at 6/35) Fusari's testimony about Tom Hamilton's stated reason for not hiring Fusari, however, is inadmissible hearsay. Fusari has offered no admissible evidence (i) that Tom Hamilton read the book <u>Poker Face</u>, (ii) that Tom Hamilton took any action specifically as a result of reading the book <u>Poker Face</u>, or (iii) that Tom Hamilton took any action as a result of the allegedly false and slanderous statements that Starland made to the author of the book <u>Poker Face</u>. <u>See</u> Def. Resp. to Plaint. Undisputed Facts (Dkt. No. 280-1 at 12-13 of 26). Without testimony from Hamilton, Fusari has failed to prove the special damages necessary to proceed with a claim for slander.

The Court should also conclude that if Fusari sustained any damage as a result of the publication of the book Poker Face, then the truth inflicted that damage. The book Poker Face accurately disclosed Fusari's "romantic" relationship simultaneously with both (i) his long-term girlfriend and former fiancé Jayne Digregorio, and (ii) then 20 year-old artist Stefani Germanotta. See Def. Resp. to Plaint. Undisputed Facts, Dkt. No. 197-1 ¶¶ at 11-16. While the truth may inflict damage, it does not create a claim for slander.

II. FUSARI HAS FAILED TO DEMONSTRATE THE EXISTENCE OF A GENUINE ISSUE OF MATERIAL FACT ON HIS SLANDER PER SE CLAIM.

    A.    The Alleged Statements Concerning Fusari's Romantic Relationship With Germanotta And Digregorio Are Not Slander Per Se.

The only statement concerning Germanotta and Digregorio that Fusari argues constitutes slander per se is: "Starland asked Fusari why he would jeopardize his current relationship; he told her that the prospect of the money and the fame 'was a rush.'" (Dkt. 280 at 28/30)

Fusari argues "[t]he defamatory part of the statement was that Fusari chose to have the relationship with Germanotta because of the 'rush' associated with fame and fortune." (Dkt. 280 at 28/30) Fusari concedes that he is not arguing slander per se based upon the statement that he was having a "romantic" relationship with two women at the same time. (Dkt. 280 at 28/30) Nor could he, because Fusari admits that statement was true. (Dkt. No. 280-1 at ¶¶ 14-19) However, Fusari's statement that the prospect of "fame and fortune" was a "rush" would not, as a matter of law, be defamatory. Fusari is in the music business. Fame and fortune would be expected to motivate him.

    B.    The Alleged Statements That Fusari Did Not Immediately Recognize Germanotta's Talent Does Not Impute Misconduct.

Suggesting that Fusari did not immediately recognize Germanotta's potential for stardom does not suggest the type of professional misconduct necessary to sustain a claim of slander per

6

se. Failing to immediately recognize Germanotta's potential would not involve either dishonesty or a failure to act consistently with others in his profession. Fusari does not dispute that Germanotta had been performing in clubs since she was 14 without anyone recognizing her potential for commercial success. Thus, unless every talent scout and producer who saw Germanotta before she signed with Interscope Records is guilty of professional misconduct, Fusari has no reasonable argument that the statements Starland allegedly made constitute professional misconduct.

III.     FUSARI'S FALSE LIGHT CLAIM FAILS BECAUSE FUSARI HAS OFFERED NO EVIDENCE TO CREATE A GENUINE ISSUE OF MATERIAL FACT AS TO STARLAND'S STATE OF MIND.

Fusari's opposition papers affirmatively demonstrate that he has no admissible evidence that Starland had knowledge of, or acted with reckless disregard as to, the falsity of the publicized matter. See Defendants' response to Starland's statement of undisputed facts, 43 and 44. (Dkt. 280-1, 15/26)

Accordingly, because Fusari has failed to offer any evidence concerning Starland's state of mind in making the alleged statements that provide the basis for Fusari's false light claim, Fusari has failed to create a genuine issue of material fact for trial on that claim.

**Reply Argument on the Constructive Trust**

I.     DEFENDANTS MISSTATE THE RELIEF STARLAND SEEKS IN THIS ACTION AND ON THIS MOTION.

Starland's amended complaint filed October 6, 2011, specifically requested a constructive trust as a mechanism to determine and distribute the Future Revenue. (Dkt. No. 56 at ¶23, repeated at ¶¶ 27, 33 and 38.)

Starland merely requests partial summary judgment that she is entitled to a constructive trust on defendants' Future Revenue if, and only if, the jury finds that Starland is entitled to a

portion of that Future Revenue. This is appropriate under Rule 56. Starland has not asked this Court to determine liability on her claims, or to impose a constructive trust on defendants' Future Revenue at this time.

II. DEFENDANTS DO NOT DISPUTE THE PREMISES OF STARLAND'S ARGUMENT THAT THE COURT SHOULD IMPOSE A CONSTRUCTIVE TRUST IF THE JURY FINDS LIABILITY FOR A PORTION OF DEFENDANTS' FUTURE REVENUE.

Starland's argument to impose a constructive trust rests on the following four facts.

1. <u>Defendants will receive Future Revenue</u>. Defendants admit this. (Dkt. 280-1 at 16/26)

2. <u>Starland seeks a share of defendants' Future Revenue.</u> Defendants object to this statement, but do not dispute it. (Dkt. 280-1 at 16/26)

3. <u>The amount of defendants' Future Revenue is not hypothetical, but will be known to the penny with the passage of time.</u> Defendants again object to this statement, but do not dispute it. (Dkt. 280-1 at 16/26)

4. <u>No one can determine, at the present time, the precise amount of the Future Revenue</u>. Defendants essentially admit this, stating "there is no possible way that the amount of revenue can or will be determined to the penny," (Dkt. 280-1 at 17/26); and "not even a mathematical genius could do more than get close" to determining the amount of Future Revenue that defendants will receive. (<u>Id.</u>)

Based upon these facts, the advantage of the relief Starland seeks is apparent. If the parties attempt to prove to the jury the amount of defendants' Future Revenue and reduce that amount to present value, the jury will either underestimate or overestimate the amount of that Future Revenue. If, however, the Court imposes a constructive trust on the portion of defendants' Future Revenue that the jury determines that Starland is entitled to recover, Starland will receive

8

precisely what the jury determines that Starland is entitled to receive. Defendants do not dispute that the Court has the authority under Fed. R. Civ. P. 56 to grant the relief that Starland seeks.

III.   DEFENDANTS' ARGUMENTS CONCERNING THE
       ABSENCE OF IRREPARABLE HARM AND A RES HAVE NO MERIT.

   A.   Even If A Constructive Trust Required Proof Of
        Irreparable Harm, Starland Can Demonstrate That Irreparable Harm.

New Jersey law does not require irreparable injury as a condition for the imposition of a constructive trust. Defendants cite no case law imposing such a requirement. (Dkt. 280 at 31-32/35) The "irreparable loss" discussed in Snepp v. U.S., 444 U.S. 507, 100 S. Ct. 763 (1980), which defendants quote, relates to the preliminary injunction that the U.S. sought. Id. at 509, 765.

Constructive trusts are a flexible remedy, available when appropriate under the circumstances. (Dkt. 273-1 at 39/40)(Flanigan v. Munson, 175 N.J. 597, 608 (N.J. 2003) ("Generally, courts are authorized to impose a constructive trust wherever specific restitution in equity is appropriate on the facts.")(Internal quotes omitted.)(Internal quotation omitted.); Rudbart v. N. Jersey Dist. Water Supply Com, 127 N.J. 344, 363 (N.J. 1992)("As we have repeatedly emphasized, the concept of a constructive trust is limited only by the inventiveness of men who find new ways to enrich themselves unjustly by grasping what should not belong to them.")(Internal quotes omitted.)

\* \* \* \* \*

Defendants' reliance upon Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp., 847 F.2d 100, 102 (3d Cir. 1988), for the proposition that "[t]he availability of adequate monetary damages belies a claim of irreparable injury" (Dkt. 280 at 31/35), is misplaced. Plaintiff sought a preliminary injunction, Id. at 101, not a constructive trust.

Defendants' reliance upon Morton v. Beyer, 822 F.2d 364 (3d Cir. 1987), holding modified by Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421 (3d Cir. 1994), is misplaced for the same reason. In that case, Morton sued under 42 U.S.C. § 1983 after being suspended without pay from his job as a corrections officer. Id. at 365. Morton then moved for a preliminary injunction seeking back pay for the period during which he had been suspended without pay, and reinstatement or alternatively, continued suspension with pay. Id. The Court found that Morton did not sustain irreparable injury, because Morton would recover the same amount of money if he succeeded on the merits of the underlying claim. Id. at 372.

    B.    Defendants' Contracts With Third Parties Securing Their Future Revenue Are A Res.

Defendants' contracts that will provide the source of their Future Revenue may be the "res" of a constructive trust. For example, in Snepp v. United States, 444 U.S. 507, 100 S. Ct. 763 (1980), the Supreme Court had no difficulty imposing a contructive trust on future income from a book, even in the absence of existing contracts that would generate future revenue from that book. Defendants' opposition to Starland's motion based upon the absence of a "res" therefore fails.

Conclusion

For the reasons set forth above, and in her prior submissions to this Court, Starland respectfully requests that the Court grant her motion for summary judgment.

Dated: September 9, 2013

                                            **COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.**

                                            By  s/David M. Kohane
                                                David M. Kohane

**DUNNEGAN & SCILEPPI LLC**

By *s/William Dunnegan*
    William Dunnegan

Attorneys for Plaintiff Wendy Starland