**COLE, SCHOTZ, MEISEL,**
 **FORMAN & LEONARD, P.A.**
A Professional Corporation
Court Plaza North - 25 Main Street
P.O. Box 800
Hackensack, New Jersey  07602-0800
201-489-3000
201-489-1536  Facsimile

**DUNNEGAN & SCILEPPI LLC**
350 Fifth Avenue
New York, New York 10118
(212) 332-8300
(212) 332-8301 Facsimile

Attorneys for Plaintiff Wendy Starland

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| WENDY STARLAND, | : |
| | : |
| Plaintiff, | : CASE NO.:10-CV-04930-JLL-MAH |
| | : |
| vs. | : **STATEMENT OF PLAINTIFF** |
| | : **WENDY STARLAND PURSUANT** |
| | : **TO LOCAL CIVIL RULE 56.1** |
| ROB FUSARI AND ROB FUSARI | : **IN REPLY TO DEFENDANTS'** |
| PRODUCTIONS, LLC, | : **STATEMENT** |
| | : |
| Defendants. | : |
| | : |

Pursuant to Rule 56.1 of the Civil Rules of this Court, plaintiff Wendy Starland ("Starland") respectfully responds to the defendants' statement of material facts in dispute.

<u>Affirmative Defenses</u>

<u>Defendants' Statement</u>

1. In spite of the contract she allegedly had with Fusari, Starland testified that she tried to steer Germanotta – who at that time was "Lady Gaga" – away from work with Fusari:

> Q. When Stefani Germanotta, who by that time was Lady Gaga, spoke to you about the lower advance that was being offered by Interscope, and – well,

>   when she spoke to you about the lower advance being offered by Interscope, you told her that Fusari might be motivated by eagerness to collect a larger advance, is that right?
>
> A.  I told her, in substance, that it was in her – I told her to consider, um, the motivation of people around her. That's what I told her.
>
> Q.  And you told her that you thought that perhaps Fusari was being motivated by a desire for a larger advance, didn't you?
>
> A.  Yes.
>
> Q.  And you told her that you didn't think that that was necessarily in her best interest, didn't you?
>
> A.  Yes.

(DeZao Decl., Exhibit A [Starland Dep.], 73: 14 – 74: 6).

Plaintiff's Response

Denied, insofar as it asserts Starland steered Germanotta away from Fusari. Rather, Starland encouraged Germanotta to consider the best interest of her career and the personal motivations of the people surrounding her. (Dunnegan declaration in opposition to defendants' motion for summary judgment, sworn to October 22, 2012, Dkt. No. 190-1 ("Dunnegan Opposition Dec., Dkt. No. 190-1"), Ex F at 73:15-74:22, Ex. K at Resp. to Interrog. No. 8, pp. 14-15.) Starland's advice was not a "contrary action." (Dunnegan Opposition Dec., Dkt. No. 190-1, Ex F at 71:17-21.) Fusari's perceived short-term, personal, interest were not necessarily in the best interest of Starland and Fusari's agreement.

Admitted that Starland gave the quoted testimony.

Defendants' Statement

2.  Similarly, she admitted to telling Germanotta that songs like "Blueberry Kisses" and other Beatles'-inspired tracks she was writing with Fusari were inconsistent (*Id*. at 72: 3-8).

Plaintiff's Response

Denied.  Starland told Germanotta that certain songs Germanotta was writing with Fusari, such as Blueberry Kisses and other Beatles inspired tracks were inconsistent with Germanotta's image.  (Dunnegan Opposition Dec., Dkt. No. 190-1, Ex. F at 71:22-72:12.)

Defendants' Statement

3.      Starland confirmed at deposition her interrogatory answer that all of the time she allegedly spent searching for a singer for Fusari had another aim:

> Q.  Let me ask you to turn to page five of your interrogatory responses in response to interrogatory Number 7.
>
> At the top of page six you say, "All hours devoted to searching for a unique singer for Fusari also had at least another purpose."
>
> Is that right?
>
> A.  That is right.
>
> Q.  What were the other purposes?
>
> A.  To have fun, to in some instances meet up with friends, you know, various other purposes.

(*Id*. at 129: 13 – 22).

> Q.  . . . .
>
> Did the hours that you spend searching for a unique singer for Fusari also involve other business purposes?
>
> A.  I, um, never turned my radar off.  So –
>
> Q.  So your radar was always on.  You always kept your eyes and ears open, is that correct?
>
> A.  I tried my best to.

(*Id*. at 130: 4-10).

3

Plaintiff's Response

Denied, except admitted that Starland gave the testimony quoted above. Starland testified that the time she devoted to searching for another singer also had at least another purpose, such as having fun or meeting friends. (Dunnegan Opposition Dec., Dkt. No. 190-1, Ex. F at 129:13-22.)

Defendants' Statement

4. Starland testified that she is still "considering" suing Germanotta (*Id.* at 194: 6), because she had an agreement with her (*Id.* at 195: 11-15).

Plaintiff's Response

Denied. Starland testified in her interrogatory answers that the reason she was not currently seeking compensation from Germanotta was because "she has not finished weighing the advantages and disadvantages of formally seeking compensation." (DeZao Aff. In support of defendants' motion for summary judgment, Dkt. No. 176-3, Ex F. at Resp. to Interrog. No. 18, p. 29.)

Admitted that Starland testified, in response to the question, "Are you still considering suing [Germanotta]?" "There is a consideration," and that Starland testified that she had an agreement with Germanotta. However, defendants' statement, stringing together two loosely related quoted from Starland's testimony, is misleading. (Dunnegan Opposition Dec., Dkt. No. 190-1, Ex F at 194:3-195:11.)

Defendants' Statement

5. Starland testified that Germanotta had an oral agreement with her that was not honored (*Id.* at 203: 8-9).

Plaintiff's Response

Admitted.

Defendants' Statement

6. Starland received an extremely expensive handbag from Germanotta (Plaintiff's Response to Defendants' First Requests to Admit [DeZao Decl., Exhibit B], ¶14).

Plaintiff's Response

Denied. Starland testified that she received a handbag from Germanotta as a gift. (Dunnegan Opposition Dec., Dkt. No. 190-1, Ex F at 201:20-202:8.) Whether this was "extremely" expensive is not a fact and should not require a response.

Defendants' Statement

7. Starland further stated in Interrogatory answers that the reason she was not currently seeking compensation from Germanotta was because "she has not finished weighing the advantages and disadvantages of formally seeking compensation" (DeZao Decl., Exhibit C [December 8, 2011 Plaintiff's Responses to Fusari's Supplemental Interrogatories], ¶18).

Plaintiff's Response

Admitted.

Defendants' Statement

8. In March 2007, Starland sought and received from Germanotta a "recommendation letter" in which Germanotta recounted how Starland introduced her to Fusari (DeZao Decl., Exhibit D). The letter is silent as to any further "contributions" Starland made to Germanotta's career.

Plaintiff's Response

The first sentence is admitted. The second sentence is denied. (DeZao Decl., Exhibit D)

Defendants' Statement

9.      James Starkman, the Plaintiff's father, testified that he spoke with the Plaintiff about once a week (DeZao Decl., Exhibit E [Starkman Dep.], 12: 12-24), but that the Plaintiff never told him about her involvement with Germanotta (*Id.* at 12: 25 – 13: 2; 13-15).

Plaintiff's Response

Admitted.

Defendants' Statement

10.     While the Plaintiff has claimed that she helped Germanotta with business strategy; pitching to record labels; and what to wear, Germanotta testified they she and the Plaintiff "did not have professional business meetings" but "drinks and shared [ ] stories about the business, . . . ." (DeZao Decl., Exhibit F [Germanotta Dep.], 89: 15-22).

Plaintiff's Response

Admitted that the two partial quotations are accurate.  Denied that this testimony is inconsistent with the first 20 words of the statement above.  Denied that Starland did not help Germanotta with business strategy.  (Dunnegan Opposition Dec., Dkt. No. 190-1, Ex. K at Resp. to Interrog. No. 8, pp. 6-18, Ex L at Resp. to Interrog. No. 15, pp. 24-27.)

Defendants' Statement

11.     Germanotta confirmed that the Plaintiff "felt that over the course of Rob and [Germanotta] working together that Rob no longer had [Germanotta's] best interests at heart, and she . . . would tell [Germanotta to look out for [her]self and be careful" (*Id.* at 94: 11-17).

Plaintiff's Response

Admitted that Germanotta so testified.

Defendants' Statement

12.     Germanotta denied Starland's sworn claim that she advised Germanotta (i) to bleach her hair blonde (*Id.* at 94: 18 – 95: 14); (ii) to go to and buy clothes from American Apparel (*Id.* at 15-24); (iii) which of her songs was the strongest for a particular meeting (*Id.* at 97: 9 – 98: 1); (iv) try "shout-out lyrics" (*Id.* at 98: 6-25); (v) steer away from songs that used her falsetto voice, as a result of which Germanotta now intentionally writes songs staying away from her falsetto voice (*Id.* at 23: 9 – 26: 13); (v) on what lyrics were strong or weak (*Id.* at 28: 18 – 29: 6); (vi) on the overall sound of the production, suggesting that Germanotta be more consistent (*Id.* at 30: 7-15); and (vii) albums with a variety of producers on them prevented an artist from obtaining a unique sound (*Id.* at 30: 16 – 31: 8).

Plaintiff's Response

Admitted that Germanotta so testified, but otherwise denied. (Dunnegan Opposition Dec., Dkt. No. 190-1, Ex. K at Resp. to Interrog. No. 18, pp. 6-18, Ex L. at Resp. to Interrog. No. 15, pp. 24-27.)

Defendants' Statement

13.     Germanotta was adamant that "Wendy Starland had no professional artistic musical contributions to [her] music or to [her] look, career, all of the above" (*Id.* at 30: 3-6); and that the "full extent" of Starland's contribution to her career was introducing her to Fusari (*Id.* at 33: 23 – 34: 5). Indeed, in her deposition Germanotta "reaffirm[ed] her previous testimony [ ] that [Starland] and [she] were never working together" (*Id.* at 35: 8-11).

Plaintiff's Response

Admitted that Germanotta testified as to the words quoted above, but otherwise denied. (Dunnegan Opposition Dec., Dkt. No. 190-1, Ex. K at Resp. to Interrog. No. 8, pp. 6-18, Ex. L at Resp. to Interrog. No. 15, pp. 24-27.)

Defendants' Statement

14. Similar to her claim against Germanotta, Starland complained that she had also been cheated by Gavin Degraw. Jayne DiGregorio ("DiGregorio") explained:

> A. *********
>
> And that's when she's like, I knew that Gaga was going to screw me over. This is Gavin DeGraw all over again. I'm like, what do you mean, you know, what's up with Gavin DeGraw and Gaga? And she's like, well, Gavin DeGraw is an artist that I discovered and he told me that he was going to take care of me and he just left without, you know, without – just kind of left me there to dry and Gaga is doing the same exact thing. This is Gavin DeGraw all over again. And she just broke down crying.

(DeZao Decl., Exhibit G [Jayne DiGregorio Dep.], 171: 10-25).

Plaintiff's Response

Denied. (Starland Dec. in opposition to defendants' motion for summary judgment, Dkt. No. 190-7 at ¶ 6.)

Defendants' Statement

15. DiGregorio further testified that Germanotta was being pestered by Starland about payment:

> A. Again, I don't remember in full detail. But the shoot that I had with her, the photo shoot, I remember it because it was distracting from my shoot and I needed to get some photographs done of Gaga. And, you know, one minute Lady Gaga was so manic about this shoot, she was just so excited and, you know, here she was in love with Tommy, you know, they were fooling around and we're doing this photo shoot, and then she gets a text from Wendy and she just started freaking out.
>
> And I was just like, "whoa, whoa, whoa, what's going on here? Because we have to – we're doing a shoot and this is for you, so you can't be freaking out."

> And she was freaking out because she said Wendy kept harassing her with paperwork and she just won't leave her along with it. And that, you know, why doesn't she trust me that I'm going to do the right thing for her.

(*Id*. at 199: 24 – 200: 18).

### Plaintiff's Response

Denied. Starland objects pursuant to Fed. R. Civ. P. 56 that the material defendants cite to support this statement is not admissible evidence. Fed. R. Civ. 402, 802.

### Defendants' Statement

16. Starland testified that the alleged oral agreement between the parties entitled her to 50% of Fusari's proceeds resulting from his work with Germanotta:

> A. **********************
>
> And if we are able to, to do that and able to get the artist a record deal, then we would split any resulting money 50/50.

(Exhibit A [Starland Dep. Tr.], 23: 16 – 25; 25: 1-5).

### Plaintiff's Response

Denied. The original agreement did not use the name Germanotta, as Starland had not yet identified Germanotta. (Dunnegan Opposition Dec., Dkt. No. 190-1, Ex F 23:16-26:1, Ex K at Resp. to Interrog. No. 24, pp. 23.)

### Defendants' Statement

17. She claimed that she remembered the "specific word[ ]" "50/50" (*Id*. at 27: 14-20).

### Plaintiff's Response

Admitted, except denied that these were the only specific words that Starland testified she could remember that Fusari said during their subject conversation. (Dunnegan Opposition Dec., Dkt. No. 190-1, Ex F 26:5-28:1)

Defendants' Statement

18. Starland testified that "[i]t wasn't specified" how long the contract would last:

> Q. Now, assuming that the conversation that you've described constituted a contract – and is that your view, that there was an oral contract?
>
> A. There was an oral contract.
>
> Q. Did you discuss how long that contract would last?
>
>   MR. DUNNEGAN:   Objection to form.
>
> A. Can you rephrase the question?
>
> Q. Did you discuss how long the contract would last?
>
>   MR. DUNNEGAN:   Objection to form.
>
> A. Both Rob and I discussed, um, discussed an understanding of how long the contract would last.
>
> Q. That wasn't my question, whether there was an understanding. I asked whether you discussed it.
>
>   MR. DUNNEGAN:   Objection to form.
>
> A. Can you repeat the question?
>
>                     **********
>
> Q. Did you discuss with Rob Fusari how long the contract would last?
>
>   MR. DUNNEGAN:   Objection to form.
>
> A. It wasn't specified.

(*Id*. at 30: 2 – 31: 2).

Plaintiff's Response

Denied, as Starland testified that she and Fusari agreed that they would share 50/50 the revenue received as a result of the singer that Starland identified. (Dunnegan Opposition Dec.,

10

Dkt. No. 190-1, Ex. F 23:9-26:3 and 40:12-41:15, Ex. K at Resp. to Interrog. No. 24, pp. 23.)  As a result, the contract could last for any length of time that revenue resulted from the singer that Starland identified.  Defendants never moved to compel further testimony from Starland.

Admitted that Starland gave the quoted testimony.

<u>Defendants' Statement</u>

19.     Starland still claims that she is entitled to "50 percent of all money derived in connection with – that was given to Rob Fusari or Rob Fusari Productions . . . that was – that was received from the overall – all monies received from the Lady Gaga project" (*Id.* at 36: 22 – 37: 2):

> A. All money that was received that went from the Lady Gaga project, somehow related to the Lady Gaga project that was received by Rob Fusari, or Rob Fusari Productions, would be divided 50/50 between myself and Rob Fusari, yes, all money which is the gross, as we all know.

(*Id*. at 40: 12 – 41: 24).

<u>Plaintiff's Response</u>

Admitted that this accurately reflects Starland's rights under her contract claim, but does not her rights under the fiduciary duty claim, the unjust enrichment claim and the quantum meruit claim.  (Dunnegan Opposition Dec., Dkt. No. 190-1, Ex A.)

<u>Defendants' Statement</u>

20.     Starland could not specify whether the agreement was based on Fusari's gross or net profits:

> Q. Was there any discussion about whether or not your share would be based on Fusari's gross or his net?
>
> MR. DUNNEGAN:   Objection to form.
>
> A. Yes, there was a discussion about that.

11

Q. What was that discussion?

A. That discussion was all money, all resulting revenues that came in from that project would be divided equally.

Q. Those were his words?

MR. DUNNEGAN: Objection to form.

A. In substance –

Q. I don't want in substance. I want specifically what if any discussion there was about whether or not your share would be based on gross or net. Was there any specific discussion of that, not in substance?

MR. DUNNEGAN: Objection, objection to form.

A. Could you rephrase the question?

Q. Did you and Fusari have any specific discussion about whether or not your share would based on his gross or on his net?

MR. DUNNEGAN: Objection to form.

A. Yes.

Q. What was that discussion?

A. That discussion was that all money, meaning the gross that came in, would be divided equally between us.

Q. When you say meaning the gross, did you discuss with Fusari that it would mean the gross?

MR. DUNNEGAN: Objection to form.

A. All money that was received that went from the Lady Gaga project, somehow related to the Lady Gaga project that was received by Rob Fusari, or Rob Fusari Productions, would be divided 50/50 between myself and Rob Fusari, yes, all money which is the gross, as we all know.

(*Id.* at 40: 12 – 41: 24).

Plaintiff's Response

Denied. Starland testified that her agreement with Fusari was to share 50/50 the revenue that resulted from the singer that Starland identified. (Dunnegan Opposition Dec., Dkt. No. 190-1, Ex F 23:9-26:3, Ex. K. at Resp. to Interrog. No. 24, p. 23.) As set forth in the testimony that defendants quoted, Starland testified that this was the "gross." (Dunnegan Opposition Dec., Dkt. No. 190-1, Ex F 40:12-41:24.) Defendants never moved to compel further testimony from Starland.

### Counterclaims

Defendants' Statement

21.  Fusari testified that Starland's statement that she was working as a talent scout for Fusari effected whether Hamilton would work for him:

> . . . because if people understand it as I have done this work with an artist, Lady Gaga, I think Starland has tried to maybe skew it in a different light, that she did the work with Lady Gaga as the scout, if you will.

(DeZao Decl., Exhibit 1 [Fusari Dep., 265: 5-12]).

Plaintiff's Response

Admitted that Fusari gave the quoted testimony. Denied that the statement Fusari quoted from his own deposition demonstrates that Starland's statement that she was working as a talent scout for Fusari affected whether Hamilton would work with Fusari. Defendants have not supported this assertion as Rule 56(c) requires.

Defendants' Statement

22.  He explained:

> A. No, I think it puts into question. I am not saying that, I think it puts into question what happened. That is all, I think it puts a question mark.

\*\*\*\*\*\*\*

> A. You know, it puts a question mark, did Fusari produce these records, was it Starland because she was a scout. They don't know what a scout it. Do you know what a scout is, who knows what a scout is?

(*Id.* at 265: 18 – 266: 3).

Plaintiff's Response

Admitted that Fusari gave the quoted testimony.

Defendants' Statement

23. Regarding the statement, "Fusari had tasked Starland with finding a girl who was 25 years old or younger who in his words could be the lead singer of The Strokes," Fusari testified that:

> A. Only the fact that it is not true. That it makes it sound like, she's making it sound like I put her up to this challenge or this job and if I am saying something that is true, whether it be an interview or talking to an individual, this contradicts it. It is a worldwide selling book about a huge artist. . . .

(*Id.* at 266: 4-19).

Plaintiff's Response

Admitted that Fusari gave the quoted testimony.

### Constructive Trust

Defendants' Statement

24. According to the Plaintiff's Complaint, Fusari promised the Plaintiff that they would "share equally in any revenues earned as a result" of her efforts to find a certain female singer (DeZao Decl., Exhibit A, ¶9).

Plaintiff's Response

Admitted, but Starland notes that defendants have cited to Starland's original complaint rather than her amended complaint.  (Compare DeZao Dec. Ex. A with Dkt. No. 1 and Dkt. No. 56.)

Defendants' Statement

25. The Plaintiff alleges that she "spent a substantial amount of time over the next approximately eight months searching for that unique singer" (*Id.* at ¶10); that she discovered Stefani Germanotta ("Germanotta") and introduced Germanotta to Fusari (*Id.* at ¶11); that she set up a meeting between Fusari and Germanotta (*Id.* at ¶12); and that she regularly met with Germanotta to work on Germanotta's style (*Id.* at ¶13).

Plaintiff's Response

Admitted, but Starland notes that defendants have cited to Starland's original complaint rather than her amended complaint.  (Compare DeZao Dec. Ex. A with Dkt. No. 1 and Dkt. No. 56.)

Defendants' Statement

26. The Plaintiff further alleges that, in or about May 2006, Fusari entered into an agreement with Mermaid Music, LLC, but "did not include Starland in the negotiation of this agreement" (*Id.* at ¶14).  Mermaid LLC thereafter entered into a recording contract with a major record label to exploit Germanotta's music and persona (*Id.* at ¶15).

Plaintiff's Response

Admitted, but Starland notes that defendants have cited to Starland's original complaint rather than her amended complaint.  (Compare DeZao Dec. Ex. A with Dkt. No. 1 and Dkt. No. 56.)

Defendants' Statement

27.	The Plaintiff further alleges that, after the major record deal was signed, she asked Fusari to share in the revenues and he promised to do so (*Id.* at ¶16).

Plaintiff's Response

Admitted, but Starland notes that defendants have cited to Starland's original complaint rather than her amended complaint.  (Compare DeZao Dec. Ex. A with Dkt. No. 1 and Dkt. No. 56.)

Defendants' Statement

28.	However, she alleges, she never received any monies (*Id.* at ¶17).

Plaintiff's Response

Admitted, but Starland notes that defendants have cited to Starland's original complaint rather than her amended complaint.  (Compare DeZao Dec. Ex. A with Dkt. No. 1 and Dkt. No. 56.)

Defendants' Statement

29.	The Plaintiff claims that Fusari owed her a fiduciary duty that he breached by negotiating a contract with Mermaid LLC that was negatively influenced by his relationship with Germanotta, and by not sharing revenues he received with her (*Id.* at ¶26).

Plaintiff's Response

Starland does not dispute this fact, but clarifies that that she also claims that Fusari breached his fiduciary duty to her in other ways.  (See Plaint. Brief in Opp. to Def. Mot. For Summary Judgment, Dkt. No. 190, pp. 14-17; Dunnegan Dec. in Opp. to Def. Mot. For

Summary Judgment, Ex. G at 66:19-67:8.)

Dated:   September 9, 2013

                                           **COLE, SCHOTZ, MEISEL,**

                                                  **FORMAN & LEONARD, P.A.**

By *s/David M. Kohane*
    David M. Kohane

**DUNNEGAN & SCILEPPI  LLC**

By *s/William Dunnegan*
    William Dunnegan

Attorneys for Plaintiff Wendy Starland