NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WENDY STARLAND,<br><br>        Plaintiff,<br><br>v.<br><br>ROB FUSARI et al,<br><br>        Defendants. | Civil Action No. 10-4930 (JLL) (JAD)<br><br>**OPINION AND ORDER** |

**LINARES, District Judge.**

This matter comes before the Court upon Plaintiffs' motion for the entry of final judgment, including a constructive trust (hereinafter "Plaintiff's Motion"), (ECF No. 528), and Defendants' cross-motion for remittitur (hereinafter "Defendants' Motion"). (ECF No. 531). The Court has carefully considered the submissions made in support of and in opposition to the instant motions as well as the arguments of counsel, heard on January 28, 2014. For the reasons stated below, Plaintiff's Motion, (ECF No. 528), is granted in part and denied in part, and Defendants' Motion, (ECF No. 531), is denied.

**I. BACKGROUND**

Plaintiff, Wendy Starland (hereinafter "Plaintiff" or "Starland"), commenced this action in 2010 against Rob Fusari (hereinafter "Fusari") and Rob Fusari Productions, LLC (collectively "Defendants"), for breach of contract and breach of fiduciary duty.[1] While the facts of the case have previously been articulated by the Court, for purposes of the present motions only, the Court provides a brief summary of pertinent facts, particularly as they relate to damages in this case.

Plaintiff alleged that Defendant, Rob Fusari contracted with Plaintiff to find and develop a

---

[1] Additional causes of action omitted.

female vocal artist later referred to as the "Strokes Girl." More specifically, Defendant told Plaintiff he was looking for a girl under the age of 25 who could be the equivalent to the lead singer of The Strokes and thus is edgy, bold, confident, charismatic, and someone that "you can't take your eyes off of." Defendant apparently stated that the revenue from this "Strokes Girl" "artist project" would be split 50/50 between them. Later, Plaintiff found and brought to Defendant, Stefani Germanotta, the artist currently known as "Lady Gaga." Plaintiff thereafter, in simplest form, sued Defendants for 50% of resulting revenue from this "artist project," as well as for breach of fiduciary duty for alleged actions by the Defendant which are not relevant to the present motions.

After approximately a week-long trial in November of 2014, a jury returned a verdict in favor of the Plaintiff, Wendy Starland, on both her breach of contract and breach of fiduciary duty claims in this action. At the time of the trial, the Parties agreed upon a verdict form which was used by the jury to indicate certain damages and future amounts that the Plaintiff was entitled to. The verdict form was also based upon P-500, an exhibit in evidence where the Parties stipulated to the total amount of money received by Defendants in connection with their work with Stefani Germanotta/Lady Gaga. The relevant questions and answers to the verdict form are recreated below[2]:

Breach of Contract
1. Is Starland entitled to recover on her breach of contract claim against Fusari for 50% of $10,816,000?

        Yes _X__     No ___

2. Is Starland entitled to recover on her breach of contract claim against Fusari for 50% of the $590,112 paid to Sandy Linzer?

        Yes _X__     No ___

3. For each of the following entities, what fixed amount, or what percentage, of the future revenue Fusari, or any of his companies, actually receives in connection with his relationship with Lady Gaga is Starland entitled to recover on her claim for Breach of

---

[2] Additional questions omitted as irrelevant to the current motions.

Contract?

    a. From money Fusari, or any of his companies, receives from the payor of $1.8 million in record or merchandizing royalties over the next 9 years:

        $__900,000__ as a fixed, one-time amount,

    b. From money Fusari, or any of his companies, receives from all other entities (Interscope, Sony, ASCAP, EMI):

        $_____ as a fixed, one-time amount, or

        __50%__ percent of future amounts

Plaintiff now moves for entry of final judgment based upon the jury's answers to the questions on the verdict form, inclusive of the imposition of a constructive trust on revenue relevant to verdict form question 3b. Defendants on the other hand, oppose the entry of final judgment with regard to certain quantities incorporated in the jury verdict form, oppose the constructive trust and move for remittitur. Defendants' motion for remittitur is essentially the same as its opposition to the entry of final judgment. That is, Defendant argues that should this Court conclude that the jury's verdict did actually reflect a true award of damages, these same categories of damages should be removed via remittitur as they are unsupported by the evidence.

## II.  LEGAL STANDARDS

### A. Constructive Trust

A constructive trust is an equitable remedy and not a cause of action in and of itself. *See Flanigan v. Munson*, 175 N.J. 597, 818 A.2d 1275, 1281 (2003); *Bergen–Eastern Pension Trust v. Sorensen*, No. BER–L–7669–03, 2007 WL 283440, at *2 n. 3 (N.J.Super. Ct.App. Div. Jan 11, 2007). Courts in New Jersey have traditionally applied a two-part test when determining whether a constructive trust is an appropriate remedy. *D'Ippolito v. Castoro*, 51 N.J. 584, 589 A.2d 617 (1968). There must be a showing of (1) a wrongful act, which (2) resulted in an unjust enrichment. *Id.* The essential element for the imposition of a constructive trust is unjust enrichment. *See*

*Stewart v. Harris Structural Steel Co., Inc.*, 198 N.J.Super. 255, 265, 486 A.2d 1265 (App.Div.1984).

**B. Entry of Final Judgment**

Plaintiff's motion for the entry of a final judgment is governed by Rule 54(b), which provides:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third—party claimor when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). A decision may be regarded as "final" where it constitutes "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 436, 76 S.Ct. 895, 100 L.Ed. 1297 (1956). Once it is determined that a decision is "final," a district court presented with a motion for entry of judgment "must go on to determine whether there is any just reason for delay." *Curtiss–Wright Corp. v. General Electric Co.,* 446 U.S. 1, 8, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980).

**C. Remittitur**

The rationalization for, and use of, the remittitur is well established as a device employed when the trial judge finds that a decision of the jury is clearly unsupported and/or excessive. *Kazan v. Wolinski,* 721 F.2d 911 (3d Cir.1983); *Keystone Floor Products Co., Inc. v. Beattie Manufacturing Co.,* 432 F.Supp. 869 (E.D.Pa.1977). Its use clearly falls within the discretion of the trial judge, whose decision cannot be disturbed by this court absent a manifest abuse of discretion. *Murray v. Fairbanks Morse,* 610 F.2d 149 (3d Cir.1979); *Edynak v. Atlantic Shipping,*

4

*Inc. CIE. Chambon*, 562 F.2d 215 (3d Cir.1977). The district judge is in the best position to evaluate the evidence presented and determine whether or not the jury has come to a rationally based conclusion. *Murray*, 610 F.2d at 152–53.

### III. DISCUSSION
### A. Constructive Trust

Plaintiff seeks to impose a constructive trust on Defendants' future revenue and to "give effect" to the jury response to Question 3b of the verdict form, which states Plaintiff shall receive "50% of future amounts" from money Defendants receive from all other entities. (Pl. Br., ECF No. 528-1 at 2). Defendants argue that: 1) this Court cannot impose a constructive trust without making factual findings of a "wrongful act" (the job of the jury in this case); and 2) breach of contract alone is not enough, under New Jersey law, to impose a constructive trust. This Court agrees with Defendants.

As previously stated, Courts in New Jersey have traditionally applied a two-part test when determining whether a constructive trust is an appropriate remedy. *D'Ippolito v. Castoro*, 51 N.J. 584, 589 A.2d 617 (1968). There must be a showing of (1) a wrongful act, which (2) resulted in an unjust enrichment. "It is also well settled in New Jersey that all that is required to impose a constructive trust is a finding that there was some wrongful act, usually, though not limited to fraud, mistake, undue influence... which has resulted in a transfer of property." *In re Delauro*, 207 B.R. 412, 415 (Bankr.D.N.J.1997) citing *D'Ippolito*, 51 N.J. 584, 589, 242 A.2d 617 (1968).

It appears clear that the jury found both a breach of contract (i.e. what Plaintiff claims qualifies as a "wrongful act")[3] which Defendants benefited from unjustly (unjust enrichment).

---

[3] The constructive trust device by no means requires a criminal act; it requires a "wrongful act,"

5

However, Defendants properly points the Court to New Jersey case law stating that "breach of contract alone is not sufficient and does not qualify as the type of wrongful act or fraud which would warrant the imposition of a constructive trust. Otherwise, a constructive trust might be available whenever there was a breach of an oral agreement." *Presten v. Sailer*, 225 N.J. Super. 178, 195 (App. Div. 1988). Plaintiff argues that the fact that there was a breach of fiduciary duty should allow this recovery, however, as it appears on the verdict form, Plaintiff is requesting a constructive trust only for the 50% of future amounts received under Plaintiff's breach of contract theory. (*See* Verdict Form, 3b.). For this reason, Plaintiff's motion for a constructive trust is denied.[4]

**B. Entry of Final Judgment**

Following a verdict in favor of the Plaintiff, Plaintiff has submitted a proposed judgment order for the Court's review. Defendants oppose the entry in a number of ways. Primarily, Defendants take issue with both the quantities as well as the phrasing and language of the questions given to the jury via the verdict form. As a preliminary matter, the Court should note that this verdict form was in fact agreed upon by both parties at trial. Additionally, there is no doubt that the jury rendered a final verdict that Defendant was liable for breach of contract and breach of fiduciary duty, but the question presented by Defendants is rather one of quantifiable damages. In

---

which the New Jersey Supreme Court has described as including but is "not limited to, fraud, mistake, undue influence, or breach of a confidential relationship which has resulted in the transfer of property." *D'Ippolito*, 51 N.J. at 589.

[4] The Court notes that Plaintiff mischaracterizes the available remedy in federal court of a constructive trust. The case law Plaintiff relies upon, *Campbell Soup Co. v. Wentz*, deals with a question of power. 172 F.2d 80, 81-82 (3d Cir. 1948). This Court does not lack the power or right to grant the constructive trust as equitable relief, as Plaintiff opines, merely because the New Jersey State Courts do not allow for this remedy for breach of contract.

6

sum, the Court finds that there is no just reason to delay the entry of each quantity of damages for the following reasons.

**1. Verdict Form Question 1**

First, Defendants take issue with verdict form question 1 which reads "Is Starland entitled to recover on her breach of contract claim against Fusari for 50% of $10,816,000?" To which, the jury answered "Yes." Defendants argue that this amount, the result of a stipulation in evidence, namely, P-500, fails to consider a number of deductions that should have been made. Specifically, Defendants state that this total should: 1) exclude any of Defendant, Rob Fusari's earnings where he was a composer (because Starland did not participate); 2) exclude Fusari's earnings as a creative producer of individual songs from the total sum; 3) deduct the total by $108,500, which were Fusari's expenses incurred; and 4) exclude the sums paid to Sandy Linzer that were actual expenses of the Germanotta litigation (which were not properly quantified at trial according to Defendants).

Upon review of the record, the Court finds no reason to deduct from the $10,816,000 stipulated to as the total sum by the parties. That is, Plaintiff stated on direct examination what exactly her alleged 50/50 deal with Defendant included. Plaintiff said that Defendant told her:

> You know, Wendy, I am looking for a girl under the age of 25 who could be the female equivalent to the lead singer of The Strokes, somebody who is edgy and bold and confident and charismatic, and somebody most importantly that you can't take your eyes off of. And if you can find this person and deliver her to me, then I would approve her. If I approve her, I will sign her to my production company. When I sign her to my production company, we will develop her together. We will write songs for her, produce the album, and then shop it around to all of the, you know, use my team to shop it around to all of the record labels and publishing companies to see if we can get her a deal. *And if we can get her a deal, any revenues that results from that artist project will be split 50/50 between us.* And in the meantime, we will write songs for her, you know, and we will have a lot of songs ready for

7

her for when you hopefully find her.

11/6/2014 Tr. 27:20-29:4. Specifically, should the jury believe the Plaintiff's account of the "artist project" (which apparently they did), any revenues that results from such would be split 50/50 including songs they wrote or that Defendant had "ready for her." Based on this evidence, the jury could reasonably have found, as it did, that the total $10,816,000 Defendant received should be split 50/50 without any deductions for any music production that the Defendant did without the Plaintiff related to Germanotta. Based on the evidence presented, the jury could also reasonably find that just as Plaintiff's expenses in her search for the "Strokes Girl" were never reimbursed, any expenses that Defendant incurred were not subject to deduction. In any event, no evidence of such expenses was presented prior or subsequent to the Stipulation being entered into by the Parties. (*See* P-500). The Court will therefore not adjust the total sum of $10,816,000.

**2. Verdict Form Question 2.**

Next, Defendants argue that jury question 2, "Is Starland entitled to recover on her breach of contract claim against Fusari for 50% of the $590,112 paid to Sandy Linzer," fails to deduct from this total any amounts that were a result of the litigation between Stefani Germanotta and Defendant, Rob Fusari. That is, the only amounts paid to Sandy Linzer that Plaintiffs agree would properly be included in the sum for contract damages purposes is the amount which was not money paid in connection with the litigation. It is undisputed that Plaintiffs offered evidence that Sandy Linzer was in fact paid a total of $590,112 by Defendants. Defendants however assert that Plaintiff failed to make the necessary quantifiable distinction between monies paid in connection with the Germanotta litigation and monies that the Plaintiff is entitled to. The only relevant testimony to this distinction came when Defendant, Rob Fusari testified, and the following exchange occurred:

*Q. So the commissions that were paid to Mr. Linzer were not an expense of the lawsuit, correct?*

*MR. DEZAO: I am going to object to the characterization of an expense. It is a vague and ambiguous term.*

*THE COURT: Overruled. Do you know if they were an expense of the lawsuit -- what was the question again, whether or not they were –*

*MR. DEZAO: An expense of the lawsuit.*

*MR. DUNNEGAN: Yes. Were they a cost of obtaining the settlement of the lawsuit.*

*THE COURT: All right. Go ahead. Do you know?*

*THE WITNESS: 95 percent of his efforts were on the lawsuit.*

*Q. But not all were, correct?*
*A. Five percent.*

*Q. And did you keep time records to come up with those numbers?*

*A. No, I did not.*

*Q. You are just making a guess or an estimate?*

*A. It is an educated guess or estimate.*

*Q. How many hours did Mr. Linzer spend on the lawsuit?*

*A. You have to ask him.*

11/13/2014 Tr. 6:19:4-20:4. The Court cannot therefore definitively say that Plaintiffs have offered supporting evidence of the quantity paid to Sandy Linzer (non-litigation monies) that Plaintiff would be entitled to. Plaintiff did offer evidence that Sandy Linzer worked in a capacity as a business manager for Rob Fusari by sending e-mails and doing other non-Germanotta litigation related items. However, the only evidence of *any* money being paid to Sandy Linzer in connection with the Germanotta litigation comes from the Defendant, Rob Fusari himself. He states that the money paid to Sandy Linzer was 95% litigation expenses, and therefore asks the Court to conclude that 95% of the $590,112 quantity submitted to the jury should have been

9

subtracted, leaving the Plaintiff with 50% of $29, 506. However, it is apparent that the jury chose not to believe Defendant, Rob Fusari's assertion that 95% of the money resulted from Sandy Linzer's work related to the Germanotta litigation. Based on this evidence the jury found that none of the $590,112 was paid to Sandy Linzer in connection with the Germanotta litigation. The Court therefore includes $590,112 in the final judgment, but Defendants shall be permitted to re-raise this issue as it pertains to a sufficiency of the evidence argument through their Rule 59 motion.

### 3. Verdict Form Question 3a.

Lastly, Defendants argue that verdict question 3a should not in fact represent a present $900,000.00 which should be a part of the judgment, but rather a future award. Question 3a states: "For each of the following entities, what fixed amount, or what percentage, of the future revenue Fusari, or any of his companies, actually receives in connection with his relationship with Lady Gaga is Starland entitled to recover on her claim for Breach of Contract?" The question continues by asking "From money Fusari, or any of his companies, receives from the payor of $1.8 million in record or merchandizing royalties over the next 9 years," to which the jury answered "$900,000 as a fixed, one-time amount."

Defendants argue there is no way to construe the verdict in response to this question as an award of a present money judgment, as on its face, it was an *in futuro* award of a portion of what Defendant "actually receives." That is, this amount should not be included in the present money judgment. Defendants claim that irrespective of what "actually receives" means, it must surely require actual receipt and because the Defendant has not received the funds, he claims that

awarding Plaintiff a money judgment not tied to the money's "actual receipt" could produce the inequitable result of her receiving more than 50% of the total funds on the "project." Plaintiff however argues that Defendant had a choice to receive the relevant money in one lump sum or to have it paid over time and chose to have the money paid over time, therefore depriving the Plaintiff of receiving her share now. Plaintiff argues she should not be harmed by Defendants' choice of payment. The Court agrees and therefore the $900,000 sum shall be included in the judgment.

### C. Remittitur

The Court concludes that the jury's decision regarding the quantity of breach of contract damages is supported by evidence properly admitted and presented to the jury for its consideration. The jury's decision based on the evidence cannot be said to have been excessive or clearly unsupported by the evidence or indicative of manifest injustice and is not shocking to the Court. The jury's award is rationally based on the evidence presented, therefore Defendants' motion for remittitur is hereby denied.

### IV. CONCLUSION

For the reasons stated above, it therefore on this __ day of February, 2015, **ORDERED** that Plaintiff's Motion, (ECF No. 528), is **granted in part** as to the entry of judgment **and denied in part** as to the motion for a constructive trust, and Defendants' Motion, (ECF No. 531), is **denied**. An appropriate judgment decree accompanies this Opinion and Order.

Jose L. Linares
United States District Judge