**FILED UNDER SEAL**

**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WENDY STARLAND, | Civil Action No.: 10-4930 (JLL) |
| Plaintiff, | **OPINION** |
| v. | |
| ROB FUSARI and ROB FUSARI PRODUCTIONS, LLC, | |
| Defendants. | |

**LINARES, District Judge.**

This matter comes before the Court upon Defendant, Rob Fusari's motion for a new trial (the "Motion" or "Motion for a New Trial"). (ECF No. 576). The Court has considered the submissions made in support of and in opposition to the instant motion as well as the arguments of counsel at the June 9, 2015 oral argument. Based on the reasons set forth below, Defendant's Motion for a New Trial (ECF No. 576) is **GRANTED**.

I.     **BACKGROUND**

A.  **Parties and Counsel**

Plaintiff, Wendy Starland (hereinafter "Plaintiff" or "Starland"), commenced this action in 2010 against Rob Fusari (hereinafter "Defendant" or "Fusari") and Rob Fusari Productions, LLC (collectively "Defendants"), for breach of contract and breach of fiduciary duty.[1]  Both breaches

---

[1] Additional causes of action omitted.

stem from Plaintiff and Defendants' alleged agreement that Plaintiff would find, and both Parties would develop, a specific type of musical artist (hereinafter the "Artist Project"). Pursuant to this agreement, Plaintiff brought the music artist Stefani Germanotta (hereinafter "Germanotta" or "Lady Gaga") to Defendant, who later became the well-known artist "Lady Gaga." Plaintiff however, was never compensated for her discovery of Stefani Germanotta nor her alleged contribution to the Artist Project. A jury found in favor of Plaintiff on both claims.

Throughout the case, Plaintiff was represented primarily by Dunnegan and Scileppi, LLC, with Cole Schotz, PC serving as local counsel. William Dunnegan, Esq., (hereinafter "Mr. Dunnegan" or "Plaintiff's Counsel"), however, served as lead counsel and argued on behalf of Plaintiff at trial. As for Defendants, James Dezao, Esq., (hereinafter "Mr. Dezao") alone served as their representation at trial. The Parties stipulated that non-party Stefani Germanotta would be permitted to intervene at trial for purposes of asserting her privacy and confidentiality concerns. (ECF No. 487). Thus, Sandra Crawshaw-Sparks, Esq., (referred to as "Germanotta's Counsel") appeared on behalf of Stefani Germanotta at trial. Approximately four days after the completion of the trial, Guy Amoresano, Esq., and William Deni Jr. Esq., of Gibbons PC filed formal notices of appearances as co-counsel for Defendant. (ECF Nos. 516, 517).

## B. Pertinent Evidence Presented at Trial[2]

As explained, Plaintiff was successful in both her breach of contract claim as well as her breach of fiduciary duty claim. Plaintiff's breach of contract claim was based upon an alleged agreement between her and Defendant to split the profits of the Artist Project 50/50 if Plaintiff

---

[2] This Section shall not indicate any findings of fact but rather provide a general overview of evidence that was presented.

delivered the appropriate person to Defendant for the Project.  Much of the evidence relating to

the agreement came from the Plaintiff herself.  Indeed, at trial Plaintiff stated Defendant Fusari's

offer describing the Artist Project was the following:

> [He said:] "You know, Wendy, I am looking for a girl under the age of
> 25 who could be the female equivalent to the lead singer of The
> Strokes, somebody who is edgy and bold and confident and
> charismatic, and somebody most importantly that you can't take your
> eyes off of. And if you find this person and deliver her to me, then I
> would approve her.
> If I approve her, I will sign her to my production company.
>
> When I sign her to my production company, we will develop her
> together. We will write songs for her, produce the album, and then shop
> it around to all of the, you know, use my team to shop it around to all
> of the record labels and publishing companies to see if we can get her
> a deal. And if we can get her a deal, any revenues that results from that
> artist project will be split 50/50 between us.
>
> And in the meantime, we will write songs for her, you know, and we
> will have a lot of songs ready for her for when you hopefully find her."

(Tr. 2.28:20-29:4).  It then appears undisputed that Plaintiff introduced Defendant to Stefani

Germanotta who she found performing at a club in New York City.  Aside from Plaintiff's own

description of the agreement, Plaintiff's evidence involved two additional components.  The first

was an e-mail sent from Plaintiff to her mother, Eve Starkman, which included a pasted response

Fusari had sent Plaintiff regarding their agreement and was admitted into evidence over objection

as Plaintiff's Exhibit 6 or "P-6." (Tr. 2.35:1-36:4).  This e-mail, more relevantly, related to another

potential deal between Plaintiff and Defendant where Plaintiff described splitting "everything on

the label side 50/50" and Defendant responded, in part "Let's discuss. I am definitely open to

something like that."  The second corroborating piece of evidence of a 50/50 deal came through

portions of deposition testimony of Stefani Germanotta read into the record.  For example, Stefani

Germanotta explained it was her understanding that Plaintiff and Defendant "had initially agreed

upon 50/50" before she was signed by Defendant who then "began to change his mind."  (Tr. 6.116:11-14).

As to Plaintiff's breach of fiduciary duty claim, Plaintiff's theory was premised on ███████████████████████████████████████ That is, in short, Defendant breached his fiduciary duty to Plaintiff when ██████████████████████████████████████████ ███████████████████████ ███████████████████████████████ ████████. Throughout trial, Plaintiff's breach of fiduciary duty theory somewhat wavered in one significant regard—the emphasis ████████████████████████████████████ ██████ That is, initially, Plaintiff's Counsel described Plaintiff's breach of fiduciary duty theory ████████████████████████████████████████████████████████████ ██████████████████ ███████████████████████████████████████

However, in summations, Plaintiff's Counsel instructed: ████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████

Indeed, ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ admit ███████████████████████████████████████

        ███████████████████████████████████████
        ███████████████████████████████████████
        ███████████

---

[3] The Court notes that there are two Transcript volumes labeled "Volume 2." This citation relates to the morning session of the November 6, 2014 day of trial.  All references without the designation "Morning Session" refer to the afternoon session of the November 6, 2014 day of trial.

4



Such exchange concluded Plaintiff's case, and was the final evidence left with the jury.

## C. Procedural Posture

For purpose of this Opinion, the Court will limit the procedural history of this case to the relevant Motion. The trial in this case spanned from November 6, 2014 through November 14, 2014. The jury returned a verdict in favor of Plaintiff on both her breach of contract and breach of fiduciary duty claims and the final amended judgment was entered February 11, 2015. (ECF No. 556, "Amended Judgment"). The Amended Judgment therefore dismissed Plaintiff's third and fourth claims of her Amended Complaint and all claims for relief against Rob Fusari Productions, LLC were dismissed with prejudice and without costs. (Id. at 2).

After this Court denied Defendant Fusari's motion for judgment as a matter law, Defendant filed a motion for a new trial on March 9, 2015, which is presently before the Court. Defendant soon after notified this Court of his voluntary petition for bankruptcy relief filing under Title 11 of the United States Code, thus triggering the automatic stay provisions of 11 U.S.C. § 362. (ECF No. 594). However, the Bankruptcy Court entered an Order partially lifting the automatic stay "solely for the limited purpose of allowing Fusari's motion for a new trial to proceed to a conclusion." (ECF No. 606-1).

Soon after, this Court held a status conference on June 30, 2015 with Counsel in this matter.

At the conference, Counsel was apprised of the fact that it recently came to the Court's attention that Mr. Deni, one of the attorneys representing Fusari, is in the process of attempting to purchase a home directly from a seller-homeowner, who in turn asked this Court's wife (who is a realtor) to aid him in accomplishing the sale. Thus, assuming this sale occurs, this Court's wife, as a realtor, will likely receive a commission from the homeowner (not Mr. Deni) even though the house is not listed with her or any other realtor.

With this in mind, the Court asked both Plaintiff's counsel and Defendant's counsel to consider this information and share it with their respective clients, then submit a letter to this Court within ten (10) days regarding Counsel's and their respective clients' positions regarding same. The Court instructed that should any of the Parties take issue with this information, the undersigned would recuse himself, effective immediately. The Court informed the Trustee in the bankruptcy action as well, and asked that he too send this Court a letter within ten (10) days indicating whether he may have concerns or reservations regarding this Court continuing to handle this matter in light of the aforesaid information. All pertinent Parties expressed that they did not take issue with this Court continuing in this matter and would not seek a recusal. The Court therefore turned to Defendant's current motion.

### D. Defendant's Motion for New Trial

Defendant moves for a new trial pursuant to Federal Rule of Civil Procedure 59 on the following five overarching claims. First, Defendant argues this Court committed several prejudicial errors. Specifically, Defendant argues the Court: 1) "improperly" admitted Exhibit P-6; 2) "mistakenly" allowed ███████████████████████████

███████, 3) "mistakenly" allowed Germanotta's testimony of her "understanding" of the Parties' alleged agreement when she lacked personal knowledge, and; 4) erred by failing to grant

6

Defendant's pre-trial *Daubert* motion to exclude Plaintiff's expert. Next, Defendant purports that

the liability verdict was against the great weight of the evidence—labeling Plaintiff's evidence of

the 50/50 contract in question as nothing more than "smoke." (ECF No. 577 at 4, "Def's Br.").

Defendant further alleges that Plaintiff's readings from Germanotta's deposition improperly

violated this Court's *in limine* Order. Next, Defendant contends, for the second time, that the

verdict sheet taken in conjunction with Stipulation P-500 produced an ambiguous damages result.

Finally, Defendant argues the jury charge concerning the breach of fiduciary duty claim was "plain

error" as it inappropriately failed to distinguish a joint venture from a contract. (*See* Def's Br.).

Plaintiff opposes Defendant's Motion, claiming many of the errors delineated above were

harmless errors if errors at all. Further, Plaintiff takes issue with Defendant's trial counsel's failure

to object to many of these evidentiary issues at trial, therefore forfeiting his right as to same now.

Plaintiff also argues that a reasonable jury appropriately found for the Plaintiff and the verdict was

in no way against the great weight of the evidence. The Court takes each argument in turn.


## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 59(a) provides that:

> [t]he court may, on motion, grant a new trial on all or some of the
> issues—and to any party—as follows: (A) after a jury trial, for any
> reason for which a new trial has heretofore been granted in an action
> at law in federal court ...

Fed. R. Civ. P. 59(a). It is within the discretion of the district court whether or not to grant a new

trial. *Wagner v. Fair Acres Geriatric Ctr.,* 49 F.3d 1002, 1017 (3d Cir. 1995). Although Rule 59

does not detail the grounds on which a new trial may be granted, the following grounds have been

recognized by this Circuit: "the verdict is against the clear weight of the evidence; damages are

excessive; the trial was unfair; and that substantial errors were made in the admission or rejection

of evidence or the giving or refusal of instructions." *Lightning Lube, Inc. v. Witco Corp.,* 802

F.Supp. 1180, 1186 (D.N.J.1992) (citations omitted), *aff'd,* 4 F.3d 1153 (3d Cir. 1993).

When reviewing a motion for a new trial, a court must view the evidence in the light most

favorable to the party for whom the verdict was returned. *Wagner v. Firestone Tire & Rubber Co.,*

890 F.2d 652, 656 (3d Cir.1989). Where a motion for a new trial is based primarily on the weight

of the evidence, the discretion of the trial court is limited. *Klein v. Hollings,* 992 F.2d 1285, 1290

(3d Cir.1993): *see also Greenleaf v. Garlock, Inc.,* 174 F.3d 352, 366 (3d Cir.1999). Indeed, "new

trials because the verdict is against the weight of the evidence are proper only when the record

shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record,

cries out to be overturned or shocks [the] conscience." *Williamson v. Conrail,* 926 F.2d 1344,

1353 (3d. Cir. 1991); *see also Greenleaf,* 174 F.3d at 366. Although a court is permitted to consider

the credibility of trial witnesses and to weigh evidence, it must "exercise restraint to avoid usurping

the jury's primary function." *Hurley v. Atl. City Police Dep't,* 933 F.Supp. 396, 403 (D.N.J.1996),

*aff'd,* 174 F.3d 95 (3d Cir.1999).

## III.   DISCUSSION

Defendant, Rob Fusari (hereinafter "Defendant" or "Fusari"), moves for a new trial

pursuant to Federal Rule of Civil Procedure 59 on the basis of two overarching grounds. First,

Defendant enumerates a number of claimed evidentiary "errors" this Court made at trial. Second,

Defendant takes issue with the breach of contract verdict, claiming it was against the clear weight

of the evidence. While each of Defendant's arguments will be addressed, the Court finds a new

trial is warranted on just one of these grounds. That is, ██████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████   ████████  █

████████████████████████████, some additional background is required.  Throughout

trial, the issue of whether to admit certain aspects of the ████████████████████████████

████████████████████████████████████ Plaintiff argued that their personal

relationship was necessary to prove her breach of fiduciary duty theory, which at least initially, in

sum, provided that Defendant breached his fiduciary duty to Plaintiff ████████████████

██████████████████████████████████████████████████

relationship. ████████████████████████████

██████████████████████████████████████████████████

████████

          ██████████████████████████████████████
          ██████████████████████████████████████
          ██████████████████████████████████████
          ██████████████████████████████████
          ██████████████████████

██████████████████████████████████████████████████

which this Court will discuss in more detail later.  To prove a breach of fiduciary duty based upon

the theory articulated above, it was relevant to some degree that ████████████████████████

████████████████████████, which, when it ended, harmed Plaintiff as Lady Gaga

terminated the working relationship which Plaintiff benefitted from.  Indeed, at trial, the evidence

was ████████████████████████████████████  ████████████

████████████████████████████

          ████████████████████████████████████████
          ██████████████████████████████████████
          ████████████████████████████

          ...

9



was likely established at trial.

However, it is clear to this Court that Plaintiff tactically chose to take it a step further. Plaintiff bolstered her fiduciary duty theory by

Such exchange provided what would later be emphasized in

10

Plaintiff's Counsel's summation. He stated:



> Fusari breached that fiduciary duty ██████████████████
> █████████████████████████████████████████████
> █████████████████████████████████████████████
> █████████████████████████████████████████████
> █████████████████████████████████████████████
> █████████████████████████ After Fusari -- and
> Fusari would not deny from the witness stand that he threatened to
> burn Lady Gaga's music, if she didn't do what Fusari asked her to
> do. That's the evidence that Fusari had and he breached his fiduciary
> duty to Starland.

(Tr. 8.54:24-55:12). Thus, it was not until the very end of trial that the pieces of an unfairly

prejudicial puzzle fell into place ████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████   ████████████████████

████████████████████

Against this backdrop, the Court must decide if this situation fits that which the Third

Circuit instructs must warrant a new trial. Indeed, the Third Circuit has held that "[a] motion for

a new trial should be granted where substantial errors occurred in admission or rejection of

evidence." *Goodman v. Pa. Tpk Comm'n*, 293 F.3d 655, 676 (3d Cir. 2002). However, errors in

evidentiary rulings cannot be the basis of a new trial if the errors are harmless. Fed. R. Civ. P. 61.

Non-constitutional errors are "harmless only if it is highly probable that the errors did not affect

the outcome of the case." *McQueeney v. Wilmington Trust Co.,* 779 F.2d 916, 917 (3d Cir. 1985).

Thus, the Court must first identify an incorrect evidentiary ruling before determining whether it

was "highly probable" that the error did not affect any "substantial rights." *See id.* at 923.

## 1. The Court's Error at Trial

The Court incorrectly admitted ██████████████████████ ██ █

██████████████████ Under the Federal Rules of Evidence, evidence presented at

trial is required to be relevant. Fed. R. Evid. 402. However, pursuant to Federal Rule of Evidence

403, the trial court may, in some cases, exclude relevant evidence. Rule 403 provides that "[t]he

court may exclude relevant evidence if its probative value is substantially outweighed by a danger

of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue

delay, wasting time, or needlessly presenting cumulative evidence." The probative value of any

evidence is its "tendency to make a fact [that is of consequence to the determination of the action]

more or less probable than it would be without the evidence." Fed. R. Evid. 401. Thus, evidence

can vary greatly in the amount afforded to its probative value. The same holds true for the

prejudicial value of evidence, as any evidence that tends to harm a party's case could be said to be

prejudicial. However, for purposes of *exclusion* under Rule 403, a party is not protected from all

prejudice—only unfair prejudice. *See* Fed. R. Evid. 403; *see United States v. Bergrin,* 682 F.3d

261, 279 (3d Cir.2012) ("It must always be remembered that *unfair* prejudice is what Rule 403 is

meant to guard against...."); *see also United States v. Cunningham*, 694 F.3d 372, 390 (3d Cir.

2012).

Evidence is unfairly prejudicial only if it has "an undue tendency to suggest decision on an

improper basis, commonly, though not necessarily, an emotional one." Advisory Committee's

Note, Fed. R. Evid. 403. However, unfair prejudice "does not simply mean damage to the

opponent's cause." *Goodman,* 293 F.3d at 670 (quoting 1 McCormick on Evidence § 185 at 645

(John W. Strong, et al. eds., 5th ed.1999)). "Evidence is unfairly prejudicial if it 'appeals to the

jury's sympathies, arouses its sense of horror, provokes its instinct to punish,' or otherwise 'may

cause a jury to base its decision on something other than the established propositions in the case.'"

*Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980) (quoting 1 J. Weinstein & M. Berger, Weinstein's Evidence P 403(03), at 403-15 to 403-17 (1978)). With this framework in mind, the Court turns to the evidence at issue and finds clear error.

### a. Probative Value of the Evidence

Because the probative value of evidence is directly linked to its tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, in assessing whether ███████████ ████████████████████ are "relevant," the Court must consider the elements necessary to prove a breach of fiduciary duty. Fed. R. Evid. 401. Claims for breach of fiduciary duty require: 1) the existence of a fiduciary duty or relationship between the parties; 2) breach of that duty; and 3) resulting damages. *See F.G. v. MacDonnell,* 150 N.J. 550, 563–64 (1997). Plaintiff's claim for breach of fiduciary duty in this case was premised on the jury first findings that a joint venture existed between Plaintiff and Defendant Fusari in their agreement to find the "Stroke's Girl."[4] However, the personal relationship between Germanotta and Defendant Fusari was relevant, according to Plaintiff, to the "breach" element of her breach of fiduciary duty cause of action and contributed to damages. For this reason, a discussion of Plaintiff's breach theory is necessary.

The Court must first note that Plaintiff's theory of breach of fiduciary duty wavered throughout this case, and certainly throughout trial. It was the Court's understanding that Plaintiff claims Defendant's fiduciary duty (as a joint venturer) to her was breached when he engaged in a

---

[4] Indeed, there can be no question that joint venturers owe each other a fiduciary duty because "[t]he relation of joint adventurers ... is fiduciary, one of trust and confidence, calling for the utmost good faith, permitting of no secret advantages or benefits." *Bowne v. Windsor,* 106 N.J.Eq. 415, 416, 151 A. 124 (Ch.Div.1930), *aff'd,* 108 N.J.Eq. 274, 154 A. 768 (E. & A.1931). Thus, this element remains less than significant to ████████████████████████████████

personal relationship with Germanotta which soured and terminated the Germanotta-Fusari working relationship and therefore terminated Plaintiff's working relationship with Germanotta and resulting profits therefrom. Accordingly, the probative value of Germanotta and Defendant Fusari's personal relationship appeared relevant to Plaintiff's proof of Defendant's breach. However, █████████████████████████████████████████████████████████████ █████████████████████████████████████████████

In order to determine the probative value of the evidence at issue, it was necessary for the Court to understand the precise theory for which Plaintiff based the breach. While some strands of Plaintiff's theory remained constant, many shifted. When the issue of possibly admitting ████ ████████████████████████████████████████████████████████████████ first arose by way of motion *in limine*, Plaintiff opposed the exclusion of the statement by arguing the following:

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

███████████████████████████ Similarly, by opening remarks at trial, Plaintiff's Counsel described Plaintiff's breach of fiduciary duty theory as premised on ███████████████████████ █████████████████████████████████████████████████████████████ ████████████████       █████████████████████████████████████ ████████████████████████████████████████████████████████ █████ ████████████████████████████████████████████████████████ ███████████████████████ ____ "What is probative is he had a personal relationship that went

14

Case 2:10-cv-04930-JLL-JAD   Document 643   Filed 09/30/15   Page 15 of 33 PageID: 13056

sour and they broke up" and ███████████████████████████ However,

by the end of trial, in summations, Plaintiff's Counsel instructed a seemingly different theory,

premised on ██████████████████████████████████████████

███████████████████████



██████████████████ Corroborating this somewhat new theory in some aspects, in

Plaintiff's opposition to the Motion for a New Trial, Plaintiff claims████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

was "highly probative on this issue because it suggests Fusari's undue influence." However, this

Court does not agree.  In fact, this is the first time this Court was made aware of any claim of

undue influence.  At trial, it was only clear that Plaintiff's breach of fiduciary duty claim was

premised on a souring personal relationship which inevitably lead to the souring of a work

relationship.  This was Plaintiff's theory and she was permitted to offer relevant evidence regarding

the personal relationship between Germanotta and Defendant to fit her claim without an unfairly

prejudicial effect.  However, Plaintiff began ████████████████████████████████

---

[5] Plaintiff also went a step further ██████████████████████████████████
████████████ which will be discussed in more detail later.



Thus, Plaintiff's wavering theory of breach of fiduciary duty concluded by ▮▮▮▮▮

Consequently, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, the probative value of the testimony at issue would increase. That is, if it Lady Gaga's deposition testimony had been the extent of or the only corroborating piece of evidence Plaintiff had to depict her allegation ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮a personal relationship does not bolster a breach of fiduciary duty claim. Therefore, the evidence at issue had little to no probative value.

**b. Unfair Prejudice**

Having found that the probative value of the evidence at issue is de minimus in light of the other evidence presented at trial, the Court must now analyze the prejudice attributed to it and properly weigh the result. As a preliminary matter, the Court is convinced that the cumulative evidence alluded to ▮▮▮▮▮▮▮▮▮. If the jury believed this allegation, it could certainly "appeal[] to the jury's sympathies, arouse[] its sense of horror, [*and*] provoke[] its instinct to punish." *Carter,* 617 F.2d at 972 (quoting 1 J. Weinstein & M. Berger, Weinstein's

16

Evidence P 403(03), at 403-15 to 403-17 (1978) (emphasis added).[6]  In the criminal context, the

Third Circuit has delineated factors for determining whether evidence is unduly prejudicial, which

this Court finds worthy of consideration in this context.  *United States v. Guerrero,* 803 F.2d 783,

786 (3d Cir.1986).  These factors include: 1) the tendency of the alleged conduct to lead to a

decision on an improper basis; 2) the nature or style of the witness' testimony; 3) the probability

that the testimony is true; 4) the sufficiency of the other evidence submitted to reasonably tie the

defendant to the crime alleged and 5) whether the evidence inflames the jury to such an extent that

the inflammation cannot be remedied by providing limiting instructions.  *United States v.*

*Crawford,* 376 F. App'x 185, 189 (3d Cir. 2010).  In this case, it is worthwhile to note that these

factors would militate to a finding of unfair prejudice.

When considering the alleged ███████████████████ there is a very real risk

such evidence could lead the jury to make its decision on an improper basis.  Essentially, the jury

would be so overwhelmed by the notion ███████████████ that it would find for

Plaintiff based on repulsion to the alleged acts of Defendant.  The nature and style of the witness'

testimony is an interesting factor here because Germanotta did not testify herself but rather her

deposition was read.  However, while the testimony effectively concluded Plaintiff's case, thereby

leaving the jury with this testimony as their final thought, it was only one line of testimony as

opposed to █████████████████  Thus, this factor is likely neutral.  The

probability that the testimony is true is not really the concern, rather, the Court finds the jury, given

it clearly did not find Mr. Fusari credible, but rather found Plaintiff and Germanotta credible,

---

[6] *See also United States v. Cruz–Garcia,* 344 F.3d 951, 956 (9th Cir.2003): Unfair prejudice is
"based on something *other* than [the evidence's] persuasive weight."

would likely believe Germanotta's accusation.

While the Court does not comment on the fourth factor, the final factor discussing whether the testimony inflames the jury, is particularly persuasive. As previously indicated, ███████████ ██████ would likely motivate the jury to punish a Defendant.. While the instances in which Courts in this Circuit have granted a new trial based on "unfair prejudice" relevant to this case are few and far between, this Court cannot imagine a circumstance which fits the mold more appropriately. One case worth noting is the Third Circuit case of *Bhaya v. Westinghouse Elec. Corp.* 922 F.2d 184 (3d Cir. 1990). In *Bhaya*, the Third Circuit affirmed the district court's ruling that a new trial was warranted by fervently categorizing the testimony at issue as a "textbook example of unfair prejudice." *Id.* at 188. Notably, this Court finds the case at hand presents an even more prejudicial example than *Bhaya*.

In *Bhaya*, five former employees of defendant brought suit under the Age Discrimination in Employment Act, alleging defendant employer terminated plaintiffs because of their age. *Id.* at 185-186. During the trial, one plaintiff testified to out-of-court statements supposedly made at one of defendant's management meetings, such statements suggesting that defendant's manager had little respect for the labor laws of the relevant contracts. The district court held that the erroneous admission of this testimony necessitated a new trial because it was "quite possible" that defendant's "substantial rights" had been affected. *Bhaya, Id.* at 187 (internal citation omitted). The Third Circuit affirmed, finding the out-of-court statements had "little if any relevance or probative value" but rather "created a substantial danger of unfair prejudice" given the "jury might well have been influenced to return a verdict against [defendant] simply because the jury disapproved of management's generally lawless attitude as portrayed by [the plaintiff's] testimony." *Id.* at 188. Applying the instruction of *Bhaya*, if the disapproving of a "generally

18

lawless attitude" is unfairly prejudicial, certainly the jury in the present case would disapprove

equally or more had they believed ███████████████████████████████████████

While the personal relationship between Defendant and Germanotta did have some probative

value, this Court, on balance, finds that the testimony at issue was unfairly prejudicial.

Of final note, it is only proper that this Court flag a final impropriety with regard to the

admitted testimony of Germanotta.  It is well-established that the Court is required to articulate its

reasoning for deciding a Rule 403 objection on the record.   While a 403 determination lies within

the broad discretion of the trial court, where the court failed to perform this analysis, or where its

rationale is not apparent from the record, there is no way to review its discretion. *See Government

of Virgin Islands v. Pinney,* 967 F.2d 912, 918 (3d Cir. 1992); *see also United States v. Sampson,*

980 F.2d 883, 889 (3d Cir. 1992).

Here this Court failed to properly undergo a Rule 403 balancing.  At sidebar, the Court

bypassed analysis, and the following exchange occurred where this Court ultimately overruled the

objection to the testimony:

> PLAINTIFF'S COUNSEL: The next one starts at 220 and carries
> over to 201.
>
> THE COURT: 201.
> (Court reviews documents)
> THE COURT: I guess it is from the previous page you are reading
> that, April 19?
>
> PLAINTIFF'S COUNSEL: Yes.
>
> (Court reviews deposition.)
>
> THE COURT: Okay. I will allow it.
>
> GERMANOTTA'S COUNSEL: You will allow it?
>
> THE COURT: Yes.

DEFENDANT'S COUNSEL: That is my concern as well.

THE COURT: But --

GERMANOTTA'S COUNSEL: -- Lady Gaga.

THE COURT: I understand.
Overruled. I will allow it. Anything else?

PLAINTIFF'S COUNSEL: That is it.

(Tr. 6.107:9-24).  Without indication on the record as to the Court's 403 analysis, it is clear the Court erred.

## 2.  The Probability the Error did not affect any Substantial Rights of Defendant

The Court notes that taken in isolation, a claim ████████████████████████

████████████████████████████████████████████ There are perhaps many instances where business associates are forced to also engage in social, non-business activities together which foster a personal relationship.  But the Court finds this testimony was of little probative value to the case considering Defendant corroborated Plaintiff's claim that he had a relationship with Germanotta during the relevant time period and that the relationship ended, causing Germanotta to terminate her working relationship with him.  More to the point, with the backdrop of a ██████████████████████████████████████████████

████████████████████████ Therein lies the undeniable unfair prejudice.  But the Court's inquiry does not end there.  Assuming the jury credited ████████████████████████

█████████████████████ the Court must decide whether it is highly probable this did testimony

20

not affect Defendant's substantial rights.  This Court cannot, in good conscience, find in the affirmative.

If ever there was a circumstance to fit a finding of unfair prejudice effecting the rights of the Defendant, ███████████████████████████████████████████ ██ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████, not because it properly weighed the evidence.  Accordingly, this Court cannot in good conscience deny Defendant a new trial.

## B.  DEFENDANT'S ADDITIONAL ARGUMENTS FOR A NEW TRIAL

While this Court has found that a new trial is necessary given the unfairly prejudicial ███████████████████ presented at trial, the Court addresses each of Defendant's remaining arguments for a new trial for purposes of completeness.

## 1.  BREACH OF CONTRACT

Defendant purports that the liability verdict was against the great weight of the evidence. (Def's Br. at 2).  Defendant even goes so far as to claim Plaintiff's evidence of a 50/50 contract was nothing more than "smoke."  (Id. at 4).  However, Defendant's only pointed argument is that Plaintiff never, for years after the agreement, wrote anything to anyone claiming the contract's existence which Defendant argues should have resulted in an "inference that the 50[/]50 contract was a complete fabrication."  (Id.).  Plaintiff (perhaps correctly) argues this point borders on frivolous and explains that Plaintiff's unchallenged testimony about her January 2009 telephone call with Fusari (where he reneged on the contract) coupled with Fusari's lack of credibility,

21

provided enough evidence for the jury to credit Plaintiff's testimony and find a breach of oral

contract.   (Pl. Opp. Br. at 4-5).   As this Court previously indicated, at trial Plaintiff stated

Defendant's offer relevant to their contract was the following:

> You know, Wendy, I am looking for a girl under the age of 25 who
> could be the female equivalent to the lead singer of The Strokes,
> somebody who is edgy and bold and confident and charismatic, and
> somebody most importantly that you can't take your eyes off of.  And
> if you find this person and deliver her to me, then I would approve her.
> If I approve her, I will sign her to my production company.
>
> When I sign her to my production company, we will develop her
> together.  We will write songs for her, produce the album, and then
> shop it around to all of the, you know, use my team to shop it around
> to all of the record labels and publishing companies to see if we can get
> her a deal.  And if we can get her a deal, any revenues that results from
> that artist project will be split 50/50 between us.
>
> And in the meantime, we will write songs for her, you know, and we
> will have a lot of songs ready for her for when you hopefully find her."

(Tr. 2.28:20-29:4).[7]  Thus, with this testimony in mind, which the jury clearly found credible, the

jury reasonably inferred this specific offer was made to Plaintiff, and when she performed

accordingly by bringing Stefani Germanotta to Defendant, she was entitled to a 50/50 split of "any

revenues that result[ed] from that artist project."   Therefore, the verdict was not "against the clear

weight of the evidence."  *Lightning Lube, Inc.,* 802 F.Supp. 1180, 1186 (D.N.J.1992) (citation

omitted), *aff'd,* 4 F.3d 1153 (3d Cir. 1993).

## 2.  ADMITTING EXHIBIT P-6

As previously described, an e-mail sent from Plaintiff to her mother, Eve Starkman, which

included a pasted response Fusari had sent Plaintiff regarding their agreement, was admitted into

---

[7] The Court also finds, (*See* Section III.B, at 7), that a *joint venture* agreement on the terms listed
here would be sufficiently definite to be enforced.

evidence over objection as Plaintiff's Exhibit 6, or "P-6." (Tr. 2.35:1-36:4). This e-mail purported to corroborate the likelihood of the existence of a 50/50 deal and presumably boosted Starland's credibility. It also provided the only *documented* evidence of the 50/50 deal. However, the jury could have found that Starland's recount of the 50/50 deal was credible in and of itself via her testimony at trial.

Defendant takes issue with the email document in that the date did not match the time frame Starland alleged. Defendant also points to the lack of header in the e-mail such as "To," "From," "Subject," or "Date." (Def's Br. at 9). Defendant claims this e-mail should not have been admitted into evidence as it was not an original but rather a copy and pasted display of Fusari and Starland's conversation that was sent to Starland's mother. Defendant also objected to this at trial and was overruled. However, Defendant does not appear to question the authenticity of the document, but rather its originality. In other words, Defendant does not purport that this e-mail exchange did not occur or was fabricated entirely. For this reason, the admission of P-6 was, at its worst, harmless error.

### 3. ADMITTING PORTIONS OF GERMANOTTA'S DEPOSITION DEPICTING HER "UNDERSTANDING"

Defendant moved *in limine* to exclude passages from Germanotta's deposition which explained her "understanding" of the agreement between Plaintiff and Defendant. Defendant now raises the same arguments in the motion for a new trial context. This Court permitted many of the passages to go forward. Some examples with which Defendant takes issue include the following:

Q. Now, in any of those conversations, was Rob any more specific about what his deal with Wendy was?

A. I knew at some point that there had been a discussion of -- *I mostly remember from Rob's mouth him talking about points. I don't remember if it was from Wendy or Rob specifically where the 50/50 split first came up*, but it definitely was

23

discussed by both of them separately. . .

--

A. I can tell you that the numbers 50/50 were floating around,
but *I cannot tell you that he specifically said to me*, "Her and I
have a 50/50 deal pertaining to you."

(Tr. 6.130:17-23, 6.131:9-13).   Similarly, Defendant argues that the following statements lack

personal knowledge:

It was my understanding that they had an oral agreement.
--
My understanding was that Wendy and him had
initially agreed upon 50/50 perhaps before Wendy ever
found me, and after I was signed to Rob and made music,
Rob began to change his mind.
--
I know for certain that Wendy Starland and Rob Fusari
had an agreement for her to find talent for him and be
compensated.
--
. . . Let's be clear that it does not come back to a document.
It comes back to my firm, 100 percent understanding
of an oral agreement between the two of them.

(Tr. 6.115:20-21, 6.116:11-14, 6.121:12-14, 6.121:17-20).

Lay opinion is admissible so long as it is (a) rationally based on the perception of the

witness, and (b) helpful to a clear understanding of the witness's testimony or the determination of

a fact in issue.  Fed. R. Evid. 701.  A witness testifying about business operations may testify about

"inferences that he could draw from his perception" of a business's records, or "facts or data

perceived" by him in his corporate capacity.  *Teen–Ed, Inc. v. Kimball Int'l, Inc.,* 620 F.2d 399,

403-04 (3d Cir. 1980).  Lay opinion testimony may be based on the witness's own perceptions and

"knowledge and participation in the day-to-day affairs of [the] business."  *Lightning Lube, Inc.* 4

F.3d at 1175.  As she was the prime component to Plaintiff and Defendant's alleged 50/50

agreement, Germanotta easily had first-hand knowledge of such and even admits that both Plaintiff

and Defendant discussed this with her separately, thereby demonstrating personal knowledge. (*See* Tr. 6.130:19-131:1 ("it definitely was discussed by both of them separately.")). Further, Germanotta did not have to be physically present at the time of the oral agreement to have personal knowledge of it. These portions were properly admitted by this Court.

### 4. *Daubert* Motion

Defendant argues that this Court erred by failing to grant Defendant's pre-trial motion to exclude the testimony of Plaintiff's expert, Sheldon Steiger, on *Daubert* grounds. Plaintiff proffered the expert report of Sheldon Steiger as a "professional music producer and specialist in the field of music arts development." (ECF No. 378-3 at 2, "Def's Motion to Exclude Pl's Expert"). Defendant argues that Mr. Steiger's report "failed the test of scientific reliability." (Def's Br. at 24). This Court does not agree, and finds that no error warranting a new trial occurred in this regard. First, Mr. Steiger was offered on Plaintiff's alternative unjust enrichment and quantum meruit claims alone. As indicated, the jury found for Plaintiff as to her breach of contract and breach of fiduciary duty claims only. Thus, even assuming admission of the expert report was in error, such error was harmless. Second, it is unclear what "scientific reliability" Defendant argues is required by an expert in the music industry who discusses the value of Plaintiff's services based upon his experience in the music industry.[8] For these reasons, Defendant's argument that the Court erred in denying his *Daubert* motion is unfounded.

### 5. Plaintiff's Violation of the *In Limine* Order

Defendant argues that Plaintiff read in portions of Germanotta's testimony that were previously excluded by this Court before trial when Defendant moved *in limine* as to same. (*See* ECF No. 382, Defendant's Motion to Preclude Germanotta's Testimony). Indeed, many of the

---

[8] Notably, none of these scenarios assumed a contract, which the jury found.

hearsay passages which were moved to be excluded for trial were permitted by this Court only to the extent they would be offered to rebut a recent charge of fabrication.  (ECF No. 482, Order Re ECF No. 382).  Defendant argues further that Plaintiff in fact had a motive to fabricate her claim *at all relevant times* including and before the conversations about which Stefani Germanotta testified.  (Def's Br. at 33) (emphasis added).  Plaintiff, however simply read the passages at trial without Defendant ever contending a recent fabrication.  Unfortunately, Defendant did not object at trial to these passages.  It is true that many of the passages are impermissible hearsay as they are statements made by Plaintiff to Germanotta.  Further, many of the passages are self-serving.  For example, regarding the 50/50 deal, Germanotta states: "I heard from Wendy that, from what I remember, it was initially a 50/50 split…."  This statement, and others, were offered in without any foundation rebutting a recent charge of fabrication.  In fact, Plaintiff did not make clear at all whether or not there was in fact a recent charge of fabrication.  Plaintiff however, argues that Defendant consented to the reading of these passages.[9]

While this may not be Defendant's strongest argument for a new trial, it certainly contributes.  The Parties do not dispute that the statements at issue are prior consistent statements made by Plaintiff.  Federal Rule of Evidence 801(d)(1)(B) states that a prior statement by a witness is admissible non-hearsay when it is "consistent with the declarant's testimony and is offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive is so testifying."  The following four requirements must be met in order for prior consistent statements to be admitted into evidence under Rule 801(d)(1)(B):

> (1) the declarant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony; (3) the proponent must offer a prior consistent statement that is

---

[9] Plaintiff cites to the record for this proposition; however, the citation did not point this Court to any agreement whatsoever.

consistent with the declarant's challenged in-court testimony; and, (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose.

*United States v. Collicott,* 92 F.3d 973, 979 (9th Cir. 1996) (citing *Tome v. United States,* 513 U.S. 150 (1995)).

This Court previously ruled that Plaintiff's prior consistent statements regarding her 50/50 deal with Defendant would be permitted only if Defendant charged that her trial testimony was recently fabricated. In order for a prior consistent statement to be admitted under Rule 801(d)(1)(B), it must be "offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." Fed. R. Evid. 801(d)(1)(B). The Supreme Court in *Tome* instructed that "[p]rior consistent statements may not be admitted to counter all forms of impeachment or to bolster the witness merely because she has been discredited." 513 U.S. at 159. The purpose of Rule 801(d)(1)(B) is not to "bolster[ ] the veracity of the story told," but to rebut a charge of recent fabrication or improper influence or motive. *Id. See also United States v. Drury,* 396 F.3d 1303, 1316 (11th Cir. 2005) ("Moreover, and perhaps more significant, prior consistent statements are treated as admissible non-hearsay *only* if they are offered to rebut a specific allegation of recent fabrication, not to rehabilitate credibility that has been generally called into question."). Indeed, "there need be only a suggestion that the witness consciously altered his testimony in order to permit the use of earlier statements that are generally consistent with the testimony at trial." *United States v. Casoni,* 950 F.2d 893, 904 (3d Cir. 1991). In this case, it was never suggested that Plaintiff altered her testimony in order to permit the use of earlier statements that are generally consistent with the testimony at trial. Plaintiff has not pointed this Court to any such allegation. For this reason, Plaintiff's self-serving statements should have been excluded; however, because Defendant failed to object to these statements at trial, the Court was constrained. In any event, this Court does not find a new trial is warranted on this error alone.

27

**6. Verdict Sheet and P-500**

Defendant argues that the jury questions, coupled with the wording of a stipulation of the parties (P-500) produced an ambiguity concerning the jury's decision as it relates to damages. Thus, Defendant argues that a new trial is necessary to remedy that ambiguity. Primarily, Defendant takes issue with both the quantities as well as the phrasing and language of the questions given to the jury via the verdict form. As a preliminary matter, the Court should note that this verdict form was in fact agreed upon by both parties at trial. Additionally, there is no doubt that the jury rendered a final verdict that Defendant was liable for breach of contract and breach of fiduciary duty, but the question presented by Defendant is rather one of quantifiable damages. Finally, at its core, the same argument was rejected by this Court when Defendant previously moved for remittitur. The Court previously found:

> Upon review of the record, the Court finds no reason to deduct from the $10,816,000 stipulated to as the total sum by the parties. That is, Plaintiff stated on direct examination what exactly her alleged 50/50 deal with Defendant included...Specifically, should the jury believe the Plaintiff's account of the "artist project" (which apparently they did), any revenues that results from such would be split 50/50 including songs they wrote or that Defendant had "ready for her." Based on this evidence, the jury could reasonably have found, as it did, that the total $10,816,000 Defendant received should be split 50/50 without any deductions for any music production that the Defendant did without the Plaintiff related to Germanotta. Based on the evidence presented, the jury could also reasonably find that just as Plaintiff's expenses in her search for the "Strokes Girl" were never reimbursed, any expenses that Defendant incurred were not subject to deduction. In any event, no evidence of such expenses was presented prior or subsequent to the Stipulation being entered into by the Parties. (*See* P-500). The Court will therefore not adjust the total sum of $10,816,000.

(ECF No. 553 at 7-8, "Opinion/Order on Plaintiff's Motion for Entry of Final Judgment"). This Court, even in application of the standard for a new trial, will not conclude admitting P-500 was

clear error. Said exhibit was admitted not only without objection, but was stipulated to. To now

hold that a stipulation can be overruled post-jury verdict and is reason to grant a new trial would

undercut the purpose of stipulating to facts for trial and directly undermines the need for efficiency

at trial. This Court will not diminish this important public policy. More to the point, this Court is

granting a new trial on liability, thus granting a new trial on damages would be inconsequential.


**7. Jury Charge for Breach of Fiduciary Duty Claim**

Defendant claims that the jury charge relating to Plaintiff's breach of fiduciary duty claim

contained "plain error" because this Court, in the opinion of Defendant, "equated a finding that a

contract existed with a finding of the existence a joint enterprise" which is required for a breach

of fiduciary duty claim. (Def's Br. at 38). Specifically, Defendant takes issue with the following

instruction:

> THE COURT: Obviously, if you answer yes as to the breach of contract,
> then you have found that there was a contract between the parties here
> and a joint enterprise, which allows you to then consider the breach of
> fiduciary duty claim, which is question four.
> The amount of damages . . . .

(Tr. 8.87:5-10) (emphasis added). Notably however, this was not part of the Court's charge to the

jury but rather was stated while briefly reviewing the verdict sheet agreed upon by the parties. The

*charge* to the jury regarding a joint venture was previously agreed upon by the Parties and this

argument was previously dismissed by this Court when Defendant proffered it via his Rule 50

motion. (*See* Opinion/Order on Plaintiff's Motion for Entry of Final Judgment at 7). To reverse

for a confusing or misleading jury instruction, a reviewing court "must be left with a substantial

and ineradicable doubt as to whether the jury was properly guided in its deliberations." *United

States v. Traitz,* 871 F.2d 368, 383 (3d Cir.), *cert. denied,* 493 U.S. 821, 110 S.Ct. 78, 107 L.Ed.2d

44 (1989). This Court cannot find there was doubt as to whether the jury was properly guided in deliberations.

A joint venture is predicated on the same legal event as an employment, partnership, contract or other relationship: an agreement between the parties. *Wittner v. Metzger*, 72 N.J.Super. 438, 443, 178 A.2d 671, 674 (App. Div. 1962) ("The Sine qua non of joint venture is a contract purposefully entered into by the parties"). However, the joint venture relationship may be less formal. *Hellenic Lines, Ltd. v. Commodities Bagging & Shipping, Process Supply Co.,* 611 F.Supp. 665, 679 (D.N.J.1985). It may be implied wholly or in part from the acts and conduct of the parties. *Id.* Where there is an explicit agreement, it "need contain no particular form of expression, nor is formality of execution necessary." *Wittner,* 72 N.J.Super. at 444, 178 A.2d at 676 (citation omitted). "A joint venture agreement will contain some or all of the following elements":

> (A) A contribution by the parties of money, property, effort, knowledge, skill or other asset to a common undertaking;
> (B) A joint property interest in the subject matter of the venture;
> (C) A right of mutual control or management of the enterprise;
> (D) Expectation of profit, or the presence of 'adventure,' as it is sometimes called;
> (E) A right to participate in the profits;
> (F) Most usually, limitation of the objective to a single undertaking or Ad hoc enterprise.
> The agreement, whether implied, explicit, or a combination of the two, will be interpreted and its validity tested under the normal rules of contract construction.

*Lo Bosco v. Kure Eng'g Ltd.,* 891 F. Supp. 1020, 1027 (D.N.J. 1995) (citations omitted). "Whether or not the parties to a particular contract have, as between themselves, created the relationship of a joint venture depends upon their intention." *First Mechanics Bank of Trenton, N.J., v. Comm'r of Internal Revenue,* 91 F.2d 275, 278 (3d Cir. 1937).

At trial, Plaintiff explained the following, evidencing a "joint venture" under the standard delineated above: 1) Plaintiff contributed her knowledge, effort and skills to find the "Strokes girl," which included visiting clubs etc.; 2) Plaintiff contributed to the development and commercialization of the "Strokes girl," (as did Defendant, Rob Fusari by his own admissions); (Tr. 2.45:24-48:18; 2.108:11-113:10); and 3) Plaintiff and Fusari each expected to profit from the venture and to participate in the profits 50/50. (Tr. 2.27:20-29:4, 2.108:11-115:5).[10]   Further, contrary to Defendant's assertion that Plaintiff was merely an "independent contractor," (*See* ECF No. 563-1 at 17), Plaintiff's testimony that Fusari told her "when I sign her to my production company, we will develop her together," evidences an intent to enter into a joint venture. From this evidence, the jury could reasonably infer an intended joint venture.

## IV.   CONCLUSION

For the reasons stated above, Defendant's Motion for a New Trial (ECF No. 576) is **GRANTED**.  Given the confidentiality issues in the proceeding, in an exercise of caution, this Court has filed the Opinion under seal.  The parties are permitted to file by Friday, September 18, 2015, an appropriate motion to seal or redact the Opinion (including any proposed redactions).  If no motions are received by said date, the Court will unseal the Opinion in its entirety.

An appropriate order accompanies this Opinion.

---

[10] The Court notes that though the contract did not provide for a sharing of losses, the absence of such an agreement is not decisive of the issue. *First Mechanics Bank of Trenton, N.J.*, 91 F.2d at 278.

_/s/ Jose L. Linares_____
Jose L. Linares, U.S.D.J

DATED:  September 3, 2015